PATRICIA JONES, BARBARA POWERS, AND ENNIO PASQUAR-
IELLO, PLAINTIFFS-RESPONDENTS, v. DOROTHY H. WAR-
REN, TOWNSHIP CLERK OF THE TOWNSHIP OF STAFFORD,
AND OCEAN COUNTY BOARD OF ELECTIONS, DEFEND-
ANTS-RESPONDENTS, AND WESLEY K. BELL, DEFENDANT-
APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued September 18, 1984—Decided October 10, 1984.

Submitted After Remand December 3,
1984—Decided January 2, 1985.

174

Before Judges ANTELL, J.H. COLEMAN and SIMPSON. *Sterns, Herbert & Weinroth,* for appellant Wesley K. Bell. *Dasti* and *Murphy,* for defendant-respondent Dorothy H. Warren.

*Masch & Visotcky,* for plaintiffs-respondents Patricia Jones, et al.

The opinion of the court was delivered by,

ANTELL, P.J.A.D.

In our earlier opinion we held that signatures on a recall petition under *N.J.S.A.* 40:69A–169 must be attested to on the basis of personal knowledge. We remanded for reconsideration and directed the trial judge to make specific factual findings as to whether the signatures challenged for lack of proper attestation were or were not "personally observed by the attesting witness to have been placed on the petition." It will be remembered that 1589 signatures were required. The number found to be valid on the original and amended petitions was 1628. By letter dated November 8, 1984 the trial judge submitted his findings in compliance with our directions and it appears therefrom that he invalidated an additional 16, leaving 1612 intact, 23 more than required.

█ In this proceeding we consider the renewed appeal by intervenor Wesley K. Bell from the trial judge's findings to the extent that they leave undisturbed certain other signatures on the petition which intervenor contends should have been invalidated. In this proceeding we may alter the trial judge's factual findings only if we are " 'convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice,' " *Rova Farms Resort v. Investors Ins. Co.,* 65 *N.J.* 474, 484 (1974), quoting *Fagliarone v. Tp. of No. Bergen,* 78 *N.J.Super.* 154, 155 (App.Div.1963). We will deal with the individual signatures in the same order as did the trial judge.

█ *Arthur Yerman* and *Margaret Yerman.* The petition which the Yermans signed was circulated by Rick Sinopoli, who was not a resident of Stafford Township, and the petition accordingly bears the attesting signature of Ennio Pasquariello.

The trial judge found the signatures valid for the reason that intervenor had failed to prove that "the person for whom they signed was alone." The testimony, however, that Sinopoli "was alone in our house" was uncontradicted. We therefore reverse the finding of the trial judge and find these signatures to be invalid.

■ *George Spiegel* and *Margaret Spiegel.* The trial judge did not address the signature of Margaret Spiegel. He found that the signature of George Spiegel was valid for the same reason as the Yerman signatures. However George Spiegel testified without contradiction that Rick Sinopoli was accompanied at the time of presenting the petition only by his child. We therefore reverse the finding of the trial judge as to the signature of George Spiegel and invalidate as well that of his wife, who signed for Rick Sinopoli at the same time.

■ *Jeffrey Whittaker.* The trial judge found that the signature of Jeffrey Whittaker was placed on the petition by Whittaker's wife, but the judge refused to invalidate this signature because Mr. Whittaker had chosen not to withdraw his name from the petition after it had been filed. The ruling contravenes *N.J.S.A.* 40:69A–170, requiring that each signature to the paper be "the genuine signature of the person whose name it purports to be," and disregards the clear intent of our earlier ruling. Accordingly, the finding of the trial judge is reversed and this signature is found to be invalid.

*Rita Zellman.* The trial judge refused to invalidate this signature even though Zellman's husband signed on her behalf. This finding of the trial judge is similarly reversed and the signature held to be invalid.

■ *Susan Ruoff.* This signature was placed on a petition attested to by Fred Vasallo, but circulated by Jerry Savarese. The trial judge concluded that the proofs failed to demonstrate Vasallo did not actually see Ruoff sign the petition. Testimony was given by Ruoff regarding those present when she signed the petition. She said, "[j]ust me and Jerry I guess," and "[a]s far as if he was with anybody, I really don't know." Taking

into account the circumstances under which she signed the petition, we cannot say that the trial judge's finding was grossly inconsistent with the evidence.

■ *The Perkins petition.* This petition was circulated by Maurice Perkins, but attested to by his wife. Although Mr. Perkins later testified that his wife witnessed all the signatures "to the best of my knowledge," his earlier testimony that "[n]o one was present" when signatures seven, eight and nine were placed on the petition clearly signified that Mrs. Perkins did not witness those signatures. Accordingly, the finding of the trial judge with respect thereto is reversed and these three signatures are found to be invalid.

*The Alman petition.* Although Mrs. Alman attested to the genuineness of 17 signatures on page 79 of her petition, she conceded that "I was not there" for number 17, which the trial judge invalidated. Of the remaining 16, Mrs. Alman could only identify three that she actually witnessed. This witness was working together with William Costa, and she attested to the signatures even though the petition had been circulated by Costa. As she testified, when she "turned his and mine in * * I was told I needed an affidavit." The circumstances surrounding the preparation of the petition were explained in the following illuminating language:

> ... I was really not in the doorway when a lot of these were signed, but we were walking the street together. He took one side, I took the other. As I would come out of the house across the street and Bill would come out of one, why, we would meet and he'd say oh, I got this one, you know, and I'd look to see who it was. Several times I was standing right there as he was getting signatures, but I have no idea which ones they would be.

■■ In a matter of such importance as the recall of a mayor, where the circulators of a petition are regularly indifferent to statutory requirements, signatures should not be held valid on a recall petition where the attesting witness has "no idea" which signatures she actually witnessed. Although we cannot conclude that the trial judge's findings as to three of the signatures, which Mrs. Alman affirmatively stated she witnessed, have no support in the evidence, we reverse the trial

judge's findings as to the remaining 13 and hold these to be invalid.

*Stephen Bayer.* This signature was obtained by Rick Sinopoli who, as we noted earlier, was not a township resident. It was therefore attested to by his father, William Sinopoli. The signature was obtained at a baseball game and, although Bayer acknowledged that William Sinopoli was somewhere in the crowd, he categorically stated that he "was not present * * * was not there in the immediate area" when the signature was placed on the petition. Inasmuch as William Sinopoli did not testify to having witnessed Bayer's signature, the mere possibility that he observed the signing while a spectator at a baseball game cannot prevail in the face of Bayer's clear testimony to the contrary. The attestation of a signature to a recall petition is of sufficient importance to require the undivided attention of the attesting witness and that he or she at least be in the immediate area where the petition is signed. We reverse the finding of the trial judge and find this signature invalid.

*The Sinopoli petition.* This petition was circulated by Carmine DiPompo, who testified that he obtained signatures two through five, nine and ten while he was "alone." However, he later testified that "Mr. Sinopoli was present." The discrepancy between the two statements was never clarified and, although we are inclined to believe that they were made within different contexts, we cannot say that the finding of the trial judge that Sinopoli was present was not supported by the evidence.

*The Powers petition.* The challenged portion of this petition involves two pages: page 20, circulated by Thomas Powers, and page 21, apparently circulated by Thomas and Barbara Powers. Barbara Powers attested both. By some incorrect arithmetic, which we will not attempt to unravel, the trial judge invalidated nine of the signatures on Mrs. Powers' petition. Our independent analysis of those pages requires that an additional signature be invalidated, bringing the total to ten,

as follows.  Of 12 signatures on page 20, Barbara Powers admitted she was not present for six, and testified that she was uncertain as to four.  Thus, six are held to be invalid; as to the remainder, the intervenor has failed to sustain his burden of proving they were not properly witnessed.  Of the 13 signatures on page 21, those of Susan Gibson, Letino Coldi, James Rinnier and Elaine Rinnier are invalid.  Susan Gibson testified without contradiction that only Thomas Powers was present when she signed (number six).  Mrs. Powers conceded that the signature of Letino Coldi (number seven) was obtained out of her presence.  Finally, the signatures of the Rinniers were obtained by Thomas Powers while Barbara Powers waited in the car.  She testified that it was "at night" and that "Tom went in and obtained the signatures of both eleven and twelve." Although she later stated, "I believe it was outside," such attestation from a car at night does not comport with the requirement of *N.J.S.A.* 40:69A–169.

█  *Joan Masiag.*  This witness signed a petition circulated by Rick Sinopoli, but attested to by Angelo Zaccariello.  Sinopoli was accompanied by another person whom Masiag could not identify, and for this reason the judge held that the proofs did not exclude the possibility that the unidentified person was Zaccariello.  However, this witness clearly testified that she knew Zaccariello and left no doubt that the unidentified person was not he.  Accordingly, we reverse the finding of the trial judge and this signature is found to be invalid.

█  *Thomas O'Sullivan.*  This signature was obtained by Rick Sinopoli but attested to by Angelo Zaccariello.  The witness was uncertain whether the signing took place inside his house or on his outdoor porch.  He also made it clear that Sinopoli was alone and, when asked whether anyone else was with him, answered "[n]ot immediately with him."  Based on the possibilities that the signing took place on the outdoor porch and that Zaccariello was watching from a concealed or distant vantage point, the trial judge concluded that the proofs failed to demonstrate Zaccariello did not witness the signature.

As we said with respect to the Bayer signature, taking into consideration the fact that Zaccariello did not testify and the witness' testimony that Zaccariello was not present, we find that the determination below as to this signature is so inconsistent with the credible evidence as to require reversal. The finding of the trial judge is reversed and this signature is found to be invalid.

*The Carletto petition.* The trial judge did not deal with this petition in his letter opinion. However, it is clear from the testimony of the attesting witness, Nina Carletto, that she did not witness six signatures, those of Richard Taylor, Ruth Taylor, Shirley Pritchard, Howard W. Peer, and Emil Parker, Sr. Since there is a question of whether Pritchard was previously withdrawn because she was not a registered voter, we amend the findings of the trial judge and hold only five to be invalid.

In all we find invalid 31 signatures in addition to those invalidated by the trial judge. Deducting these from the 1612 found valid in the Law Division there remain only 1581 valid signatures, eight less than the 1589 required to support the recall petition. The recall petition is therefore invalid and the order of November 28, 1983 dismissing Bell's counterclaim and cross-claim is accordingly reversed.