**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3424-16T3

SIRIS PHARMACEUTICALS, LLC,

    Plaintiff-Respondent,

v.

UNITY BANK, and 75 NORTH
HOLDINGS, LLC,

    Defendants,

and

AJB RESIDENTIAL REALTY
ENTERPRISES, INC.

    Defendant/Third-Party
    Plaintiff-Appellant,

and

UNITY BANK

    Third-Party Plaintiff,

v.

JOSEPH BENSEEV and 75 NORTH 1,
LLC,

    Third-Party Defendants.

_____

Submitted February 28, 2018 — Decided  June 14, 2018

Before Judges Fuentes and Suter.

On appeal from Superior Court of New Jersey, Law Division, Warren County, Docket No. DC-002076-14.

Michelle S. Kirmser, attorney for appellants.

Hoagland, Longo, Moran, Dunst & Doukas, LLP, attorneys for respondent (Richard J. Mirra, of counsel and on the brief).

PER CURIAM

AJB Residential Realty Enterprises, Inc. (AJB) appeals the March 9, 2017 judgment for $7563.32 entered against it in favor of Siris Pharmaceuticals, LLC. (Siris). We remanded the case in 2016 for a plenary hearing to determine who should reimburse Siris for its security deposit. See Siris Pharms., Inc. v. Unity Bank, No. A-5487-14 (App. Div. Nov. 30, 2016). We affirm entry of the trial court's judgment finding that AJB is responsible for the payment.

We recite the following from our 2016 decision to provide context.

> Siris has been a tenant at 75 North Street in Bloomsbury, New Jersey since 2001. Siris entered into [a] lease agreement (lease) with building's former owner, 75 North Holdings, LLC (75 North Holdings) on December 19, 2007. The "Security Deposit" clause in the lease recited, in relevant part, "If the [l]andlord's interest in the [r]ental [s]pace is transferred[,] the [l]andlord shall turn over the [s]ecurity [d]eposit to the new [l]andlord."

Defendant/third-party plaintiff, Unity Bank (Unity), held a first mortgage on the property. In July 2009, 75 North Holdings defaulted on mortgage payments prompting Unity to file a complaint in foreclosure against 75 North Holdings. Upon Unity's request, Michael G. Cohan was appointed by court order as the rent receiver on behalf of 75 North Holdings to collect, demand and receive the rents, issues, and profits of the property. The order also provided that Siris' security deposit was to be released from 75 North Holdings to Cohan.

In May 2010, Cohan and Siris executed a lease addenda modifying the lease term and amount of rent per month. The addenda stated that all other terms of the December 19, 2007 lease between Siris and 75 North Holdings remained in effect.

In October 2011, a writ of execution was issued in favor of Unity. The sheriff's deed, dated May 8, 2012, transferred title to the property in Unity's subsidiary, AJB. The property was then sold to third-party defendant Joseph Benseev's assignee, 75 North 1, LLC, (75 North 1) on February 28, 2014. In March 2014, Siris wrote to Unity requesting that the security deposit from the 2007 lease be forwarded to 75 North 1. Thereafter, in April 2014, Siris requested the security deposit be returned. Unity did not comply with either request.

Siris entered into a lease with 75 North 1 in July 2014. Since Unity neither returned the original security deposit to Siris nor forwarded those funds to 75 North 1, Siris was required to pay a new security deposit.

[Siris, slip op. at 1-3.]

In December 2014, Siris filed a complaint in the Special Civil Part against Unity and AJB for the return of its $7563.32 security deposit. Unity and AJB filed a third-party complaint against Joseph Benseev and 75 North 1 LLC alleging that if they are liable to Siris then under AJB's contract with Benseev, the third-party defendants are liable to AJB. Following a bench trial, a judgment was entered on June 30, 2015, in favor of Siris against AJB for the amount of the security deposit in reliance on the Security Deposit Act (SDA), N.J.S.A. 46:8-21.1. Another order was entered on July 9, 2015, that dismissed the third-party complaint because "[i]t cannot be reasonably expected that 75 North 1, LLC or Joseph Benseev obtained a security deposit that was mishandled."

On appeal from those judgments, we held that "the premise for the judge's decision was erroneous" because the SDA did not apply to commercial leases. Id. at 5. We affirmed on different grounds the trial court's decision that Siris was "entitled to either the return of the security deposit or the application of the security deposit to its lease with 75 North 1." Id. at 5-6. Under the order appointing Cohan as receiver, we held he was responsible to collect Siris' security deposit from 75 North Holdings. We observed that the lease addenda he entered into with Siris provided that provisions of the 2007 lease were to survive, including the clause in the original lease that put the "onus of transfer" on

the landlord.  Id. at 7.  Thus, we held "when the May 2012 sheriff's deed vested title of the property to Unity's subsidiary, AJB, Cohan was required to transfer Siris' security deposit to AJB." Id. at 6.

However, we also noted that "the lack of a record relating to the security deposit's chain of custody" made difficult the task of determining "the responsible party for the return or application of the security deposit funds."  Id. at 7.  The record did not indicate whether the funds were transferred to Cohan or whether he transferred them to AJB.  It did not disclose where the security deposits were held despite Cohan's obligation to provide a reconciliation of those funds.  We reversed the judgment in favor of Siris against AJB and remanded the issue of who should reimburse Siris the security deposit for a plenary hearing.[1]

Evidence presented at the second plenary hearing showed that Siris paid its security deposit to 75 North Holdings, and that it was not returned to Siris by the rent receiver, Unity or AJB. Under Siris' lease with 75 North Holdings, the security deposit could be comingled with other funds.  That lease provided that "if

---

[1]  Cohan was not a party. Our opinion expressed no opinion about the liability of Cohan or other defendants.  We also found without merit AJB's contention that its third-party complaint should not have been dismissed against 75 North 1 LLC or Joseph Benseev.

the [l]andlord's interest in the [r]ental [s]pace is transferred, the [l]andlord shall turn over the [s]ecurity [d]eposit to the [n]ew [l]andlord." When Cohan was appointed, his firm asked 75 North Holdings to turn over all operating accounts and security deposits. He was not provided with any separately maintained security deposits. Cohan collected rents for over two years. All the rents that he collected were used in the operation of the building. Any surplus was to be paid to Unity, but there was no surplus. The rent receiver provided a final accounting in 2012. It did not indicate that any security deposit was separately maintained.

When ABJ became the owner of the property after the sheriff's sale, Siris paid it rent for two years. Neither AJB nor Unity asked Siris for additional funds for a security deposit. ABJ sold the property to 75 North 1 in 2014. Siris' prior security deposit was not transferred to 75 North 1 when AJB sold the property. Siris entered into a new lease with 75 North 1 and paid it a new security deposit.

After the second plenary hearing, the trial court entered a $7563.32 judgment against AJB in favor of Siris representing the amount of Siris's security deposit. The trial court found that Siris was not asked to supply a new security deposit, Cohan's duty as rent receiver was to hold Siris's security deposit, but that

A-3424-16T3

Siris paid a new deposit to the 75 North 1. The court concluded that "it is clear to the [c]ourt that AJB is responsible for returning the security deposit to Siris" because it found "AJB was the last defendant in possession of Siris' security deposit."

On appeal, AJB contends the judgment was not supported by substantial and credible evidence. Cohan testified he did not receive the security deposit or account for it. He did not transfer the security deposit to AJB or to Unity Bank. Therefore, because AJB never had possession of the security deposit and was not "the last responsible party in possession," AJB contends it is not responsible to return the security deposit to Siris. Siris argues that because AJB was the landlord it either had to collect the security deposit from its predecessor or credit the amount to Siris' lease. Otherwise, AJB was unjustly enriched.

We afford a deferential standard of review to the factual findings of the trial court on appeal from a bench trial. Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 483-84 (1974). These findings will not be disturbed unless they are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Id. at 484 (quoting Fagliarone v. Twp. of N. Bergen, 78 N.J. Super. 154, 155 (App. Div. 1963)). However, our review of a trial court's legal determinations is plenary. D'Agostino

v. Maldonado, 216 N.J. 168, 182 (2013) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

We are satisfied there was sufficient evidence to support the trial court's judgment against AJB. There is no dispute that Siris paid a security deposit of $7563.32 to 75 North Holdings. Under the terms of the lease, the security deposit could be comingled "by the[l]andlord with other monies."

In our prior opinion, we held that the rent receiver was responsible to collect the security deposit from 75 North Holdings. He testified that his firm sent a certified letter to the debtor requesting "things we need to do our job" which included "any existing operating accounts they have, we need the proceeds of, any security deposits they have . . . ." Although there were no separately maintained security deposits, his final accounting did report operating income and expenses. These were used for the "expenses of management and care of the mortgaged premises." There was no surplus remaining for AJB when it became owner of the premises.

AJB did not dispute testimony from Siris' comptroller that Siris was asked to pay rent to AJB and did so for two years until the property was sold to a new owner in 2014. Although AJB never demanded a new security deposit, it also was not disputed that Siris' security deposit was comingled with the operating funds and

the operating funds were used to maintain the mortgaged premises. We are satisfied, based on the commingling of the security deposit with operating funds that benefited AJB, that the trial court was correct to require AJB to repay Siris the security deposit of $7563.32.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION