**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2557-16T2

IN THE MATTER OF THE ESTATE
OF ERNA M. JONES,

DAVID J. JONES, Executor of
the Estate of ERNA M. JONES,

     Plaintiff-Appellant,

v.

BARBARA E. ADAMS,

     Defendant-Respondent,

and

WALTER R. JONES,

     Interested Party.

_____

        Argued September 12, 2018 – Decided September 19, 2018

        Before Judges Yannotti, Gilson and Natali.

        On appeal from Superior Court of New Jersey, Chancery Division, Probate Part, Burlington County, Docket No. 2015-1966.

Thomas N. Ganiaris argued the cause for appellant.

Hugh J. Hutchison (Sciolla, Hutchison, Leonard & Tinari, LLP) of the Pennsylvania bar, admitted pro hac vice, argued the cause for respondent (Leonard, Sciolla, Hutchison, Leonard & Tinari, LLP, and Hugh J. Hutchison, attorneys; Gregory E. Sciolla and Paul H. Schultz, on the brief).

PER CURIAM

Plaintiff David J. Jones appeals from an order of the Chancery Division dated January 12, 2017, which determined that upon the death of Erna M. Jones (Mrs. Jones), defendant Barbara E. Adams became the owner of all funds in a certain investment account, which defendant and Mrs. Jones held as joint tenants with a right of survivorship. Plaintiff also appeals from an order dated February 12, 2016, admitting Hugh J. Hutchison of the Pennsylvania Bar pro hac vice. Having considered the arguments presented on appeal in light of the record and the applicable law, we affirm.

I.

We briefly summarize the relevant facts and procedural history. Mrs. Jones was married to Walter R. Jones, Sr. (Mr. Jones), and they had three children: plaintiff, defendant, and Walter R. Jones (Walter). Mr. Jones died on November 5, 1998. He was seventy-four years old. At the time of his death, Mr. and Mrs. Jones had, among other assets, an investment brokerage account

with Olde Discount Corporation (ODS), which consisted of money market funds, stocks and stock options, corporate bonds, mutual funds, and a unit investment trust. Mrs. Jones became the owner of the ODS account, which then had a value of about $282,024.

Before Mr. Jones died, defendant resided in Sussex County in a home that she owned. Mr. and Mrs. Jones resided in Southampton, New Jersey. At trial, defendant testified that sometime before he died, Mr. Jones had suggested that they both sell their homes and purchase another home in which they would live together. Mr. Jones also told defendant that after he died, he wanted her to take care of Mrs. Jones. In October 1998, defendant sold her home in Sussex County. Defendant continued to work in North Jersey, and lived with acquaintances while she began to look for a new home in South Jersey.

ODS had certain regulations regarding its investment accounts, including a regulation which required that when a joint owner of an account dies, the account must be closed and the proceeds transferred to the owner's estate or to a new account in the name of the surviving party. After Mr. Jones died, Mrs. Jones arranged to meet with Michael Quinn, an investment representative at ODS, in order to comply with the ODS regulation. Defendant accompanied her mother to the meeting. At the meeting, Mrs. Jones and defendant completed an

account application, which identified Mrs. Jones as the "[a]pplicant" and defendant as a "[s]econd [p]arty." They checked the box for an account with "[j]oint [t]enants [w]ith [r]ights of [s]urvivorship." On December 7, 1998, Quinn approved the application.

Quinn testified that he did not recall the meeting with Mrs. Jones and defendant, but noted that he regularly opened accounts of this type. Quinn said it was his practice to ask clients the kind of account they wanted. For joint accounts with a right of survivorship, Quinn would explain that if one party died, the surviving party would become the owner of the account. Quinn stated that except for Mrs. Jones's and defendant's signatures, all of the writing on the application form was his.

Quinn did not recall discussing Mrs. Jones's will or her estate plan. He testified that typically, he does not ask clients for a copy of their wills. He also did not recall whether Mrs. Jones told him she was making a gift to defendant. After the application was approved, the balance in the ODS account was transferred to the new account, which the parties refer to as Olde Investors Account II (the Account).

In 1999, defendant purchased a house in Marlton, New Jersey. Mrs. Jones planned to sell her home in Southampton and move into defendant's new home,

A-2557-16T2

but she refused to contribute monies for its acquisition. Defendant purchased the home with the proceeds from the sale of her Sussex County residence and other monies that she borrowed. Mrs. Jones later sold her home in Southampton and moved into the Marlton home with defendant. She intended to live with defendant for the remainder of her life.

Defendant testified that after her father died, Mrs. Jones was healthy, active, mentally competent, and independent. She said her mother handled her own finances, wrote her own checks, paid her own bills, and made deposits to and withdrawals from her accounts. In February 2000, Mrs. Jones opened a money market account in her own name with The Vanguard Group. She also had checking and savings accounts with Beneficial Bank.

In 2013, Mrs. Jones's health began to deteriorate, and she was hospitalized due to a neck injury. In February 2013, Mrs. Jones executed a power of attorney, authorizing defendant to act on her behalf on health and financial matters. The attorney who prepared the power of attorney testified that at the time, Mrs. Jones appeared mentally competent and understood what she was doing. Later, when Mrs. Jones's health declined, defendant used the power of attorney to withdraw money from her mother's Beneficial accounts to pay her mother's expenses.

Plaintiff testified that Mrs. Jones did not intend to bequeath all of the monies in the Account to defendant. He said that his parents always had treated their three children equally. According to plaintiff, his mother was not financially astute, and she relied upon her husband and others to handle the family's finances. Plaintiff testified that after his father died, his mother was despondent and she lacked the mental capacity to make financial decisions.

Plaintiff and Walter testified that at times, they stayed in their sister's home in Marlton. Plaintiff noted that after his mother moved in with defendant, she drove her own car to go shopping and to church. She also socialized with friends. According to plaintiff, at that time, his mother's mind was "o.k.," but she was grieving over his father's death. He noted that his mother drove her own car until she was ninety-one years old.

Mrs. Jones died on June 25, 2015, at age ninety-five. In her will, Mrs. Jones appointed plaintiff as executor of her estate. She directed that all of her debts and funeral expenses be paid, and she bequeathed the remainder of her estate to her husband, if he survived her. The will further provided that in the event Mr. Jones did not survive her, the remainder of the estate would be given to her surviving children "in equal shares."

A-2557-16T2

On November 5, 2015, plaintiff filed a verified complaint in the trial court pursuant to Rule 4:67-1(a) challenging the distribution to defendant of the funds in the Account. Plaintiff sought a determination that under the New Jersey Multiple-Party Deposit Account Act (the MPDAA), N.J.S.A. 17:16I-1 to -17, the Account was not a joint account with a right of survivorship, and defendant had no legal right to all of the funds. Plaintiff further claimed the Account had been established as a "convenience account" and all the monies in the account were part of the estate, which should be distributed in accordance with the will. Plaintiff also claimed that Mrs. Jones and defendant had a confidential relationship, and defendant had exercised undue influence in having her mother name her as a joint owner of the Account with a right of survivorship.

Plaintiff sought an order requiring defendant to pay over the funds in the Account to the estate, so that they could be shared equally by Mrs. Jones's three surviving children, as provided in her will. In addition, plaintiff sought an order requiring defendant to return to the estate certain monies she had withdrawn from Mrs. Jones's accounts. In his complaint, plaintiff named Walter as an interested party.

In January 2016, defendant filed an answer disputing plaintiff's claims. She also filed a motion pursuant to Rule 1:21-2(b)(3) seeking Hutchison's

A-2557-16T2

admission pro hac vice to represent her in the case. Plaintiff opposed the motion. The judge entered an order dated February 12, 2016, finding that defendant had shown good cause for Hutchison's admission pro hac vice.

On February 26, 2016, the judge denied plaintiff's application for relief and converted the matter to a plenary proceeding. The judge afforded the parties an opportunity for discovery. Plaintiff later filed a motion for summary judgment, which the judge denied.

In October 2016, the judge conducted a trial and thereafter filed a written opinion. The judge found that Mrs. Jones did not intend to make an inter vivos transfer of the Account to defendant. The judge also found that a confidential relationship existed between Mrs. Jones and defendant, but defendant did not exercise undue influence upon Mrs. Jones when she opened the Account.

In addition, the judge decided that Mrs. Jones did not intend to establish a joint account with defendant as a convenience account so defendant could pay Mrs. Jones's expenses. The judge concluded that defendant was a joint owner of the Account with a right of survivorship, and she was entitled to all of the funds in the Account upon Mrs. Jones's death.

The judge determined that under the MPDAA, the funds in the Account belonged to defendant as the surviving joint owner, and plaintiff had not

8

presented clear and convincing evidence showing that Mrs. Jones had a different intent when the Account was opened. The judge also rejected plaintiff's claim for the return of monies that defendant had drawn from Mrs. Jones's accounts because the monies had been used to pay Mrs. Jones's expenses.

The judge memorialized her factual findings and legal conclusions in a judgment dated January 12, 2017. This appeal followed.

## II.

On appeal, plaintiff argues that the trial judge erred by finding that upon Mrs. Jones's death, defendant was entitled to all of the monies in the Account. Plaintiff argues that there is clear and convincing evidence that Mrs. Jones did not intend the Account would be a joint account with a right of survivorship, and therefore defendant did not have a right under the MPDAA to all of the funds in the Account.

Plaintiff further argues that because Mrs. Jones and defendant had a confidential relationship, defendant was required to establish by clear and convincing evidence that Mrs. Jones created the Account free of undue influence and that she intended to make an inter vivos gift to defendant. Plaintiff contends defendant did not make the required showing, and therefore the funds in the

9

Account are part of Mrs. Jones's estate and subject to distribution in accordance with her will.

In addressing these arguments, we note initially that in a non-jury trial, the trial court's factual findings are "binding on appeal when supported by adequate, substantial and credible evidence." Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974) (citing N.J. Turnpike Auth. v. Sisselman, 106 N.J. Super. 358, 370 (App. Div. 1969)). We will not disturb the court's findings of fact or conclusions of law "unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Ibid. (quoting Fagliarone v. Twp. of N. Bergen, 78 N.J. Super. 154, 155 (App. Div. 1963)).

Our deference to the trial court's fact-finding is especially appropriate where, as here, "the evidence is largely testimonial and involves questions of credibility." Cesare v. Cesare, 154 N.J. 394, 412 (1998) (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). We defer to the judge's findings because the trial court heard the testimony, had the opportunity to observe the witnesses and therefore had a better opportunity than a reviewing court to

A-2557-16T2

evaluate the veracity of the witnesses. <u>Gnall v. Gnall</u>, 222 N.J. 414, 428 (2015) (citing <u>Cesare</u>, 154 N.J. at 412).

A. The MPDAA

The MPDAA provides in pertinent part that "[s]ums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intention at the time the account is created." N.J.S.A. 17:16I-5(a). The parties agree that the Account is a "joint account" as defined in N.J.S.A. 17:16I-2(d). The statute states that a "joint account" is "an account payable on request to one or more of two or more parties whether or not mention is made of any right of survivorship, and regardless whether the names of the parties are stated in the conjunctive or in the disjunctive." <u>Ibid.</u>

Here, the trial judge noted that clear and convincing evidence is evidence that "should produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." <u>Estate of Ostlund v. Ostlund</u>, 391 N.J. Super. 390, 400 (App. Div. 2007) (quoting <u>In re Purrazzella</u>, 134 N.J. 228, 240 (1993)). The evidence must be "so clear, direct, and weighty and convincing as to enable [either a judge or jury] to come to a clear conviction,

without hesitancy, of the truth of the precise facts in issue." Ibid. (alteration in original) (quoting In re Seaman, 133 N.J. 67, 74 (1993)).

The judge found defendant had testified credibly about the circumstances under which the Account was opened. Defendant's testimony was corroborated by Quinn's testimony and the documentary evidence presented at trial. The judge determined that although Mrs. Jones's will provided that after payment of her funeral expenses and debts, the remainder of the estate would be shared equally by her three surviving children, this did not "override [the] independent and intervening step by [Mrs.] Jones in which she designated [defendant] as joint tenant with [a] right of survivorship to [the Account]."

The judge found that Mrs. Jones's action was "consistent and contemporaneous" with her decision to sell her home and move in with defendant with whom she intended to reside for the remainder of her life. The judge stated that there was no evidence to corroborate plaintiff's assertion that Mrs. Jones once told him she added defendant as an owner of the Account "for convenience." The judge noted that plaintiff's claim was "significantly tempered" by his "strong motive" to obtain one-third of the Account.

The judge also noted that in support of his claim, plaintiff had relied upon two letters plaintiff had written to defendant. The judge found that plaintiff's

reliance upon the letters was misplaced. The judge observed that plaintiff wrote the letters ten years after the Account was opened, and this was after plaintiff's relationship with defendant had soured.

We are convinced there is sufficient credible evidence in the record to support the judge's conclusion that under the MPDAA, the assets remaining in the Account belonged to defendant upon Mrs. Jones's death. The record supports the judge's determination that plaintiff failed to present clear and convincing evidence showing that Mrs. Jones did not intend to establish a joint account giving defendant a right of survivorship.

B. Inter Vivos Transfer/Confidential Relationship/Undue Influence

In addition to the statutory test established by the MPDAA for determining ownership of the account upon the death of one owner, a party may challenge ownership of a joint account by showing evidence that the person who opened the Account had a confidential relationship with the survivor. Ostlund, 391 N.J. Super. at 401 (citing Pascale v. Pascale, 113 N.J. 20, 30 (1988); In re Estate of Penna, 322 N.J. Super. 417, 422 (App. Div. 1999)). If such a relationship is established, a presumption of undue influence arises, which the survivor must rebut with clear and convincing evidence. Ibid. (citing Pascale,

113 N.J. at 30-32; Penna, 322 N.J. Super. at 426; Petruccio v. Petruccio, 205 N.J. Super. 577, 580-81 (App. Div. 1985)).

The test for determining whether a confidential relationship existed is "whether the relations between the parties are of such a character of trust and confidence as to render it reasonably certain that the one party occupied a dominant position over the other and that consequently they did not deal on terms and conditions of equality." Id. at 402 (quoting Blake v. Brennan, 1 N.J. Super. 446, 453 (Ch. Div. 1948)). In making that determination, the court should consider whether: (1) a relationship of trust and confidence between the parties actually existed; (2) the parties dealt with each other on terms of equality; (3) one party has superior knowledge of the details and effect of a proposed transaction based on a fiduciary relationship; (4) a party has exerted overmastering influence over the other party; and (5) one of the parties is weak or dependent on the other. Ibid.

Here, the judge found that Mrs. Jones did not intend to make an inter vivos transfer of the Account to defendant because the record "clearly establishe[d]" that Mrs. Jones retained her full interest in the Account. The judge noted that both Mrs. Jones and defendant had to sign forms for withdrawals from the Account. The judge pointed out that plaintiff had conceded defendant did not

14

use the Account to pay Mrs. Jones's expenses, although some of the funds in the Account were later transferred to Mrs. Jones's Vanguard account.

The judge also found that a confidential relationship existed between Mrs. Jones and defendant. The judge noted that no evidence had been presented at trial indicating that defendant exercised overmastering influence over Mrs. Jones in 1998, when the Account was opened. The judge determined that there was no evidence indicating that Mrs. Jones was "weak or dependent" upon defendant when the Account was opened.

The judge noted, however, that in 1998, defendant had prepared wills for both of her parents. When doing so, defendant had persuaded her parents not to exclude Walter from their bequests, and to name plaintiff as executor in their respective wills. In the application to open the Account, defendant identified her mother's address as her own. Moreover, in 1999, Mrs. Jones sold her home in Southampton and moved in with defendant in her home in Marlton. The judge concluded that the evidence showed that a confidential relationship existed between defendant and Mrs. Jones.

On appeal, plaintiff argues that because the judge found that Mrs. Jones did not intend to make an inter vivos gift of the Account to defendant, the judge should have ruled that defendant was not the owner of the Account and the

monies were part of Mrs. Jones's estate. We disagree. Here, the judge found that when Mrs. Jones opened the account, she did not intend to make a gift of the Account to defendant because Mrs. Jones retained her full interest in the Account during her lifetime. That finding did not preclude the judge from deciding that Mrs. Jones intended that defendant would be a joint owner of the Account, with a right of survivorship.

In responding to plaintiff's arguments on appeal, defendant argues that the judge erred by finding that she had a confidential relationship with her mother. Defendant asserts that such a relationship does not exist if the parties deal with each other on equal terms, even though they are family members. Defendant maintains there is no evidence she ever dominated her mother or exercised overmastering influence over her. She asserts her mother remained strongly independent for more than a decade after the Account was opened.

We are convinced, however, that there is sufficient credible evidence in the record to support the judge's finding that a confidential relationship existed between Mrs. Jones and defendant. Defendant's arguments on this point lack sufficient merit to warrant further discussion. R. 2:11-3(e)(1)(E).

Plaintiff further argues that the judge erred by failing to require defendant to present clear and convincing evidence showing she did not exercise undue

16

influence over Mrs. Jones when the Account was opened. Plaintiff contends there was no proof that Mrs. Jones understood the legal effect of creating a joint account with a right of survivorship. He asserts that Mrs. Jones's other accounts were solely in her name. Plaintiff contends Mrs. Jones was not aware that, upon her death, defendant would receive the Account, which contained the bulk of her assets.

As noted, the judge found that defendant did not exercise undue influence over her mother when the Account was opened. The judge decided that defendant had presented clear and convincing evidence regarding the circumstances under which the Account was established. The judge pointed out Mrs. Jones made her own financial decisions, as shown by her refusal to provide defendant with monies to help her purchase her new home in Marlton.

The judge also pointed out that in 1998 and 1999, Mrs. Jones was active and independent, even though she was grieving over her husband's death. She handled the arrangements for her husband's funeral and later arranged for the sale of the marital home. Moreover, Mrs. Jones drove her own car, socialized with friends, attended church, and went on trips. She also maintained her own checking and savings accounts, which she used while she was living with defendant.

17

The judge noted that at trial, plaintiff acknowledged that even before his father died, his mother wrote her own checks and handled the household expenses. The judge also noted that plaintiff had testified he had no knowledge of what his mother intended when she opened the Account. He knew she maintained separate accounts. The judge pointed out that when they testified in depositions, both plaintiff and Walter conceded that they had no evidence defendant exercised undue influence over their mother.

The judge concluded that defendant had presented sufficient evidence to rebut the presumption that she exercised undue influence over her mother with regard to the Account. The judge found the evidence established that defendant did not unduly influence her mother to name her as a joint owner of the Account with a right of survivorship. There is sufficient credible evidence in the record to support the judge's findings.

We reject plaintiff's contention that the judge failed to require defendant to rebut the presumption of undue influence with clear and convincing evidence. In her opinion, the judge noted that "[p]laintiff carries the burden of proving, by a preponderance of the evidence, that a confidential relationship exist[ed]" between his mother and defendant. The judge also stated that, if plaintiff was able to prove such a confidential relationship existed, "the burden shifts to the

donee to prove that no undue influence or deception was used to gain the advantage," and in proving this, the proponent of the document "must overcome the presumption by clear and convincing evidence." Thus, the judge required defendant to present clear and convincing evidence to show she did not exercise undue influence over Mrs. Jones when she named her as joint owner of the Account with a right of survivorship.

### III.

Next, plaintiff argues that the Account should be considered part of Mrs. Jones's estate because it was a convenience account. Joint accounts are sometimes created as convenience accounts to enable a named party to pay the depositor's bills and manage his or her finances. See Sadofski v. Williams, 60 N.J. 385, 398-400 (1972). When a depositor creates a joint account as a convenience, the monies in the account do not pass to the other named party upon the depositor's death. See ibid.

In this case, the judge found that "[d]efendant's actions at the time the [A]ccount was created and [thereafter] do not suggest that the [A]ccount was set up as a convenience account for [Mrs.] Jones or ever used in that manner." The judge noted that "both [p]laintiff and [d]efendant agree that [d]efendant never

19

accessed this account to satisfy [Mrs.] Jones's living expenses and medical needs."

The judge observed it was unlikely Mrs. Jones intended the Account would be used as a convenience account because the Account was opened in 1998 when Mrs. Jones was still living in her own home. The judge pointed out that this was "before [defendant] purchased her Marlton home and long before [Mrs.] Jones suffered any significant health setbacks."

The judge also wrote that the Account "was anything but convenient, as the [A]ccount required special forms to be executed bearing both account holders' signatures for withdrawals to be made." The judge observed that Mrs. Jones's "decision to leave the funds in this particular account to [defendant], after [Mrs. Jones] died," could be construed to have been done "in recognition of the sacrifices [defendant] was making to care for her."

The judge stated that when the Account was opened, "[p]lans were clearly underway . . . for [Mrs.] Jones to move in with her daughter . . . [and] live with [defendant] for the rest of her life." The judge noted that at trial, plaintiff testified that he had a conversation with his mother, in which she purportedly told plaintiff that defendant's "name was put on the account for 'convenience purposes.'" The judge said the testimony was "contrived" and found that it was

contradicted by plaintiff's admission that he had no knowledge of what his mother intended when she set up the Account. Plaintiff also "could not recall any pertinent details of this critical exchange, including the date or year of the conversation."

The judge explained that "[p]laintiff's uncorroborated statement that his mother told him she intended this account as a convenience account simply lacked credibility." The judge concluded that Mrs. Jones did not intend the Account would be used as a convenience account, and that the Account was never used in that manner. We conclude there is sufficient credible evidence in the record to support the judge's findings. Plaintiff's arguments to the contrary lack sufficient merit to warrant further discussion. R. 2:11-3(e)(1)(E).

IV.

Alternatively, plaintiff argues that "at the very minimum," the trial court should have ordered a reapportionment and reallocation of the monies in the Account to pay for certain of Mrs. Jones's expenses. Plaintiff contends that reapportionment and reallocation of the funds is warranted because defendant

"intentionally" withdrew $100,198[1] from Mrs. Jones's other accounts. Plaintiff claims these expenses should have been paid with monies in the Account.

We note that at trial, defendant's attorney stated on the record that "all of the checks that were in [dispute] with respect to [defendant]'s taking expenses have been accepted and are off the table for the purposes of this trial," to which plaintiff's attorney responded "[t]hat's correct." Thus, it appears that plaintiff withdrew any claim for reimbursement of the monies defendant withdrew from Mrs. Jones's other accounts.

In any event, the judge rejected plaintiff's claim for reapportionment and reallocation of funds in the Account. The judge found that since 2000, Mrs. Jones paid her monthly rent, tax bills, and household contributions using her own checking account. The judge also found that after Mrs. Jones's health began to decline, defendant withdrew funds from Mrs. Jones's Beneficial accounts to pay for Mrs. Jones's expenses.

The judge stated, "[d]efendant maintained a detailed account of checks written and expenditures made . . . [and] there is no evidence [d]efendant abused her power of attorney in issuing payments or that she deviated from [Mrs.

---

[1] The total includes $63,829 in caregiver expenses; $4,398 paid by defendant as expense reimbursement; $26,822 in health care expenses; $964 for the repair of a piano; and $4,185 for renovation of a bathroom shower.

Jones's] own reliance on these same accounts when [Mrs. Jones] first moved in with [d]efendant." The judge concluded that "[p]laintiff's contention [Mrs.] Jones 'designated [the Account] for her health and care expenses' is not supported by the credible trial evidence."

We are convinced the record supports the judge's conclusion that defendant did not improperly withdraw funds from Mrs. Jones's accounts, and that there is no basis to require defendant to reimburse the estate for the monies withdrawn from those accounts.

V.

Plaintiff further argues that the trial court erred by granting defendant's application for Hutchison's admission pro hac vice. A motion for pro hac vice admission is committed to the sound discretion of the court. See L. Feriozzi Concrete Co. v. Mellon Stuart Co., 229 N.J. Super. 366, 369 (App. Div. 1988). We will not reverse the trial court's order granting admission of the attorney pro hac vice unless shown to be a mistaken exercise of discretion. See ibid.

Rule 1:21-2(b)(3) governs pro hac vice admission of attorneys in civil actions. The rule provides in pertinent part that the motion shall be granted only if the court finds, based upon a supporting affidavit, that there is good cause for such admission, which shall include:

23

(A)   the cause in which the attorney seeks admission involves a complex field of law in which the attorney is a specialist, or

(B)   there has been an attorney-client relationship with the client for an extended period of time, or

(C)   there is a lack of local counsel with adequate expertise in the field involved, or

.   .   .   .

(F)   such other reason similar to those set forth in this subsection as would present good cause for the pro hac vice admission.

[Ibid.]

In support of the application for Hutchison's pro hac vice admission, defendant presented the court with a certification from Gregory E. Sciolla, an attorney with the firm Leonard, Sciolla, Hutchison, Leonard & Tinari, LLP. In his certification, Sciolla states Hutchison is a partner in the firm, and Hutchison is a member in good standing of the Pennsylvania bar.

Sciolla also states that Hutchison is qualified to serve as lead counsel in this case. He asserts Hutchison has special expertise in this "type of case" and defendant had asked him to represent her in this litigation. Furthermore, at oral argument on the motion, Sciolla noted that this case involved issues related to Mrs. Jones's power of attorney, the relationships of the beneficiaries to the

24

estate, and Mrs. Jones's mental status. Sciolla asserts Hutchison "has had great experience with" these issues.

On February 12, 2016, the judge entered an order granting defendant's motion for the reasons set forth in a statement appended to the order. The judge found that defendant had established good cause for Hutchison's admission pursuant to Rule 1:21-2(b)(3)(F) because "this case involves matters in which Hutchison specializes."

On appeal, plaintiff argues the judge erred by allowing Hutchison to appear pro hac vice. He asserts Hutchison has appeared numerous times in matters in the New Jersey courts, including another case before the same judge. He notes that the law firm's website does not indicate that Hutchison has expertise in estate litigation. He contends this is not a case involving a complex field of specialization, and there is no indication that Hutchison and defendant had an attorney-client relationship over an extended period of time.

We are not persuaded by these arguments. We are convinced there is sufficient credible evidence in the record to support the judge's determination. The judge's decision to admit Hutchison pro hac vice was a reasonable exercise of discretion under Rule 1:21-2(b)(3)(F).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2557-16T2