# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0665-17T3

STATE IN THE
INTEREST OF J.R.

_____

Submitted October 15, 2018 – Decided  October 22, 2018

Before Judges Haas and Sumners.

On appeal from Superior Court of New Jersey, Chancery Division, Cumberland County, Docket No. FJ-06-0241-17.

Joseph E. Krakora, Public Defender, attorney for appellant J.R. (Al Glimis, Designated Counsel; William P. Welaj, on the brief).

Jennifer Webb-McRae, Cumberland County Prosecutor, attorney for respondent State of New Jersey (Stephen C. Sayer, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Following a bench trial, J.R., a juvenile, was adjudicated delinquent for acts which, if committed by an adult, would constitute second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); fourth-degree possession of a weapon for an

unlawful purpose, N.J.S.A. 2C:39-4(d); and second-degree conspiracy to commit aggravated assault, N.J.S.A. 2C:5-2(a)(1) and N.J.S.A. 2C:12-1(b)(1). The trial judge imposed concurrent, suspended two-year terms on the aggravated assault and conspiracy charges, and a concurrent, suspended one-year term on the weapons charge, and placed J.R. on probation for eighteen months.

On appeal, J.R. argues that "there was insufficient evidence in the trial record to support the trial court's conclusion [that he] was guilty of any of the three charges brought against him." After reviewing the record in light of the applicable legal standards, we affirm.

The charges against J.R. stemmed from an incident that occurred late in the afternoon on November 25, 2016. On that date, the victim was walking down the street when an occupant in a passing car shot him twice with a paintball gun. The shots came from the driver's side window of the vehicle. The second paintball struck the victim in his right eye, and he continues to suffer from "cloudy" vision. The victim was not able to identify the car or the assailant who shot him.

Detective Kenneth Leyman was one of the police officers who reported to the scene. He observed two, broken pink paintballs on the sidewalk, as well as two pink paintball strikes on the front of a building near where the victim was

A-0665-17T3

hit. The detective reviewed a number of recordings made by video surveillance cameras in the area and was able to determine that the car involved in the shooting was a two-door Honda Civic with tinted windows.

Several days later, the police observed a car matching that description, parked in front of a house where C.F., a high school student, lived. Detective Leyman went to the scene and saw numerous pink paintball strikes on the front of a building across the street from C.F.'s home. Detective Leyman also learned that just three days before the victim in this case was shot, two students at the high school reported that C.F. was shooting paintballs out of a vehicle in front of the school. Detective Leyman checked the registration of the car in front of the house and learned it was owned by C.F.'s girlfriend.

Detective Leyman set up a surveillance of the car that continued for several days. During that period, the police saw C.F. driving the car on several occasions. The detective then obtained, and executed, a search warrant for the car. During the search, the police found six paintball guns, and thousands of paintballs, including several that were pink. One of the guns was a pump-action model. That gun contained a pink paintball that had exploded.

3

A-0665-17T3

Detective Leyman next interviewed C.F. at the police station.[1] At first, C.F. denied any involvement in the shooting. However, after learning of the victim's injury and speaking with his mother, C.F. stated that J.R. shot the victim with the pump-action paintball gun through the driver's side window of the car while C.F. was driving it.

C.F. repeated this account at the trial. C.F. explained that he initially lied to Detective Leyman about knowing anything about the shooting because he wanted to protect both himself and J.R., who was his close friend and "right-hand man." Although J.R.'s attorney vigorously cross-examined C.F. on the question of J.R.'s involvement in the shooting, C.F. insisted that J.R. had been the shooter.[2]

J.R. did not testify at the trial. However, his attorney called C.F.'s mother, T.M., as a witness. T.M. stated that C.F. told her "[i]t had to be [J.R.] that was with me in that car that day." T.M. agreed with C.F., stating "[t]hat's who it probably was. That's who you are with all the time."

---

[1] C.F.'s mother was present throughout the interview.

[2] Sometime prior to the trial, C.F. pled guilty to two charges, second-degree aggravated assaulted and third-degree possession of a weapon for an unlawful purpose, as the result of his involvement in the incident. In accordance with the plea agreement, the trial court sentenced C.F. to one year of probation.

4

Based on this record, Judge Gary Wodlinger found that the State had met its burden of establishing J.R.'s guilt beyond a reasonable doubt on all three charges. In his oral opinion, the judge found all of the witnesses, including C.F., to be credible. The judge explained the basis for his credibility determination concerning C.F. in the following specific terms:

> His testimony was - - I wrote it down in big bold letters, reluctant snitch. He really wasn't interested in telling on his buddy in life. That was the last thing he wanted to do. He seemed less protective of . . . himself than he was of his friend. That's my sense of the testimony.
>
> That's how I heard the relationship described, and really not rebutted anywhere during this trial. I believe the testimony that he offered here, live in court, about what happened that day, is the absolute truth about what happened.

The judge rejected defendant's argument that C.F. was not credible because he initially denied knowing anything about the shooting, and then implicated J.R. after learning there was surveillance video showing the incident. The judge stated:

> In the background noise, testimony, the evolutionary version of [C.F.'s] story was just that. The bi-product of good police work, done by a trained detective, who was able to get the star witness to ultimately tell him exactly what happened, so he could figure out what happened and who should be properly charged.

5

This appeal followed.

On appeal, J.R. contends that C.F. was not a credible witness because his story changed during his interview with Detective Leyman, and he may have decided to shift the blame to J.R. to protect himself and his mother from a potential lawsuit by the victim. Therefore, J.R. argues that the judge erred by relying on C.F.'s account of the incident to find J.R. guilty of the three offenses. We disagree.

Our standard of review in juvenile delinquency cases is the same as the one applicable to any court's decision after a bench trial. The standard is not whether the verdict was against the weight of the evidence, but rather "whether there is sufficient credible evidence in the record to support the judge's determination." In re R.V., 280 N.J. Super. 118, 121 (App. Div. 1995). Moreover, we are obliged to "give deference to those findings of the trial judge which are substantially influenced by [the] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Locurto, 157 N.J. 463, 471 (1999) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)).

"[T]he factual findings of the trial court are binding on appeal when supported by adequate, substantial, credible evidence." In re W.M., 364 N.J.

Super. 155, 165 (App. Div. 2003). "[W]e do not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice[.]" Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 484 (1974) (quoting Fagliarone v. Twp. of N. Bergen, 78 N.J. Super. 154, 155 (App. Div. 1963)).

Applying these standards, we discern no basis for interfering with Judge Wodlinger's well-developed findings, conclusions, and disposition on these charges. The judge credited C.F.'s testimony that J.R. shot the victim with the paintball gun while C.F. drove the car down the street. The judge made detailed credibility findings explaining his reasons for believing C.F.'s account of the incident, and we defer to those determinations. Locurto, 157 N.J. at 471. Therefore, we conclude that Judge Wodlinger's factual findings are fully supported by the record and, in light of those facts, his legal conclusions are unassailable. We therefore affirm substantially for the reasons that the judge expressed in his well-reasoned oral opinion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

7

A-0665-17T3