78 N.J. Super. 154 (1963)
188 A.2d 43
JOHN FAGLIARONE, PHILIP SCOZZAFAVA, SAMUEL CAFASSO, and JOHN MERTENS, PLAINTIFFS-RESPONDENTS,
v.
TOWNSHIP OF NORTH BERGEN IN THE COUNTY OF HUDSON, A MUNICIPAL CORPORATION OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 28, 1963.
Decided February 1, 1963.
*155 Before Judges GOLDMANN, FREUND and FOLEY.
Mr. Nicholas S. Schloeder argued the cause for appellant.
Mr. Leon S. Wolk argued the cause for respondents.
PER CURIAM.
Defendant township appeals from a Chancery Division "Order for Judgment" rendered after a non-jury trial on the issue of liability only. The trial judge determined that there was no just reason for delay in the entry of final judgment on that issue in favor of plaintiffs. See R.R. 4:55-2.
Plaintiffs are residents and property owners on the west side of Durham Avenue in North Bergen Township. They sought injunctive relief and money damages by reason of defendant's alleged negligence in the planning, construction and maintenance of a sewer line, resulting in their lands' being periodically flooded by storm waters and backed-up sewage.
Each of the briefs attempts an extensive review of the facts exposed in the course of the trial. It is well established that under R.R. 1:5-4(b), on a review of any civil action involving issues of fact not determined by the verdict of a jury, we may make new or amended findings of fact, first giving due regard to the trial court's opportunity to judge of the credibility of the witnesses. However, our appellate function is a limited one: we do not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice. Weiss v. I. Zapinsky, Inc., 65 N.J. Super. 351, 357 (App. Div. 1961).
*156 We have carefully reviewed the proofs and find more than substantial evidence in support of Judge Pashman's findings and conclusions, and therefore affirm the order for judgment essentially for the reasons stated in his written opinion.
We conclude, as did Judge Pashman, that there was ample proof of active wrongdoing by the township in planning, constructing and maintaining the sewer line in question. There was more here than a negligent failure to act; what the township did constitutes a negligent act of commission. Hayden v. Curley, 34 N.J. 420, 424 et seq. (1961); Milstrey v. City of Hackensack, 6 N.J. 400, 408-409 (1951); and see McAndrew v. Mularchuk, 33 N.J. 172, 181 (1960). The proofs clearly establish that defendant planned only for sewage disposal from the Durham-Smith area. Its engineers admitted they made no field investigations or dye-flow tests to ascertain whether the existing situation was in accordance with the records on file in the township engineering office. In short, the engineers failed to consider and provide for total drainage, including storm water, which investigation would have shown passed into the connecting system. It did not use the engineering standards of care testified to by plaintiffs' expert.
Defendant argues that, assuming that the weight of engineering testimony concerning the adequacy of the system it installed preponderated in plaintiffs' favor, this at best would represent a mere error in judgment for which the township cannot be held responsible. But the record establishes that there was more than an error in judgment. When the township undertook to carry out the terms of the stipulation it had entered into with the State Department of Health in 1955, whereby it agreed to abate and eliminate unlawful pollution of the Hackensack River and its tributaries, it was bound to plan and construct a system based upon adequate investigation. Instead, it planned and constructed additional sewer lines incapable of handling the storm waters and sewage which it could have determined would enter the system after the Durham-Smith area was connected up with *157 what is referred to in the record as the northern outlet sanitary system.
Defendant then argues that there was neither an error of judgment nor wrongdoing in this case because the northern outlet system could not take any greater flow than that produced by the 8" pipe leading into it from manhole "A" shown on some of the exhibits. This contention avoids the central factual issue. The township was under an obligation to correct an existing pollution condition. The State Board of Health did not order it to divert the Durham-Smith effluent into the northern outlet system; this was defendant's own solution, and it was effectuated without adequate investigation and without thought as to what might result.
Defendant, in effect, is saying that it was forced to the choice of possibly creating a nuisance  one which actually resulted and of which plaintiffs complain  in order to abate the pollution and meet its obligation under the stipulation entered into with the State Board of Health. The answer to this is that with adequate prior testing and planning, no nuisance need have resulted. Plaintiffs' expert suggested alternatives to the solution which the township adopted when it built the connection between the Durham-Smith area and the northern outlet system. There may be other feasible alternatives, but the township engineers apparently did not consider them at the time of planning and construction, simply because they were unaware of a storm drainage problem which they should have known existed.
In any event, we are not here concerned with the problem of remedy; the sole question before the court is defendant's alleged negligence and liability. The litigation has not arrived at a point where the proper remedy for the existing condition must be determined. That remedy will be fashioned at the second stage of this action, when the court deals with the questions of the scope of the mandatory injunction and the damages which plaintiffs demand.
Although defendant's brief makes some point of the fact that the trial judge was mistaken when he traced the sequence *158 of construction from manhole "A," at the edge of the Durham-Smith system, to the northern outlet system, whereas the construction proceeded in the reverse direction, we cannot perceive how this affects the validity of the trial court's findings and conclusions.
Affirmed.