968 A.2d 1230 (2009)
407 N.J. Super. 1
Steven KLUG and Bruce Licausi, Plaintiffs-Appellants,
v.
BRIDGEWATER TOWNSHIP PLANNING BOARD, Township Committee of Bridgewater Township, Bridgewater Township, Sherid, Inc., and Bernard and Susan Friedman, Defendants-Respondents.
No. A-5176-06T1
Superior Court of New Jersey, Appellate Division.
Argued January 5, 2009.
Decided May 1, 2009.
*1232 Daniel E. Somers, Morristown, argued the cause for appellants, (Somers and Malay, attorneys; Mr. Somers, on the brief).
Julie Vaccher Goldstein, Somerville, argued the cause for respondents Sherid, Inc., Bernard Friedman and Susan Friedman (Wohl, Goldstein and Zalewski, P.A., attorneys; Ms. Goldstein and Marcia Polgar Zalewski, on the brief).
David H. Soloway, Morristown, argued the cause for respondent, Bridgewater Planning Board (Vogel, Chait, Collins & Schneider, P.C., attorneys; Mr. Soloway, on the brief).
Before Judges R.B. COLEMAN, SABATINO and SIMONELLI.
The opinion of the court was delivered by
SIMONELLI, J.A.D.
Plaintiffs Steven Klug and Bruce Licausi appeal the grant of preliminary major subdivision approval by defendant Bridgewater Township Planning Board (Board) to defendant Sherid, Inc. (Sherid) for eight residential lots on land owned by defendants Bernard and Susan Friedman, principals of Sherid. Plaintiffs are neighboring landowners who oppose the project. We affirm.
The following facts are relevant to this appeal. In January 2000, Sherid applied for a nine-lot subdivision on a 12.46 acre tract located in the R-40 zone (the property). Sherid submitted with the application an Environmental Impact Statement, dated September 2000 (the 2000 EIS), prepared by Scarlett Doyle (Doyle).
The Board held public hearings on November 14, 2000 and February 13, 2001. At the conclusion of the last hearing, Sherid's attorney requested a continuance so as to address various concerns raised during the hearings. The Board granted the request.
On or about October 16, 2002, Sherid received a letter from the New Jersey Department of Environmental Protection (NJDEP) advising that wetlands of "intermediate resource value" existed on the property. As a result, on or about December 13, 2002, Sherid submitted a revised application for an eight-lot subdivision instead of nine lots.
The Board began public hearings on the revised application on April 8, 2003. At the outset of the hearing, the Board's attorney stated on the record that the Board "will consider [the revised application] a new application, without relying on any of the testimony that was submitted before." The Board held another hearing on July 28, 2003.
*1233 In or about late September 2003, the Township appointed Doyle as Township Planner. On October 10, 2003, Doyle, in her capacity as Township Planner, prepared a memorandum regarding the new application (the October 2003 memo), which she sent to the Board's chairman. The October 2003 memo did not reach the merits of the new application. It only outlined certain planning issues and recommended certain conditions for approval of the new application.
The hearings continued on October 14 and November 24, 2003. Doyle attended the hearings as the Township Planner, but did not participate. During the hearings, witnesses unconnected to Doyle or her firm testified for Sherid, including a licensed professional engineer, who testified about engineering aspects of the application; a licensed land survey and professional engineer, who testified about the surveying and engineering aspects of the application; and a professor of civil and environmental engineering, who provided expert testimony on drainage, the hydraulics of the application, and soil aspects. An expert licensed professional engineer specializing in environmental and wetlands matters testified for plaintiffs. The Board approved the new application on November 24, 2003 (the November 2003 approval), and memorialized its approval in a resolution dated December 17, 2003.
Plaintiffs filed a complaint in lieu of prerogative writs in the Law Division challenging the Board's decision. After a bench trial, Judge Reed found that the revised application was a new application, which complied with all applicable zoning ordinances and did not require a variance or waiver. Accordingly, the judge concluded that the Board's exercise of discretion was limited and that Sherid was entitled to approval. In a written opinion, the judge stated:
The application was compliant with the applicable [zoning] ordinance; the Board made appropriate findings (albeit in opposition to [plaintiffs'] conclusions) based on the evidence, in the exercise of its allowable discretion which findings are entitled to deference; the Board heard and considered [plaintiffs'] objections (which caused the applicant to revise its application) and conducted these proceedings in accordance with the [Municipal Land Use Law]. Importantly on this context, there was no error which denied [plaintiffs] due process.
The judge also concluded, however, that Doyle's involvement constituted a potential conflict of interest warranting a remand. Thus, the judge vacated the December 17, 2003 resolution and remanded to the Board for a de novo reconsideration of the record without reference to, consideration or inclusion of, the October 2003 memo or the 2000 EIS. The judge also permitted the Board, in its discretion, to obtain and consider a new EIS. He retained jurisdiction until the Board adopted a resolution consistent with his written opinion and order. The judge subsequently clarified the scope of the remand. He stated that the Board could reconsider the matter on the record before it, except for the October 2003 memo and 2000 EIS, and could reject the new application based upon the new EIS.
A different Board, consisting of new members, except one holdover from the previous Board, held hearings on April 12, May 23, June 14, and August 22, 2005.[1] Prior to the hearings, the Board retained Marcia Shiffman as a special planner for the remand. Shiffman submitted two new *1234 reports, which contained certain recommendations about proposed conditions. She determined that no waivers and variances were required. The Board considered those reports, a new EIS prepared by Vincent Agovino, testimony from Agovino and Sherid's licensed land survey/professional engineer and a professor of civil and environmental engineering, and testimony from plaintiffs' professional engineer/professional planner/environmentalist, who testified about alleged deficiencies in the new EIS. The Board also considered a Natural Heritage Program report, a LOI/Line Verification and two general permits from the NJDEP, two tree surveys and other documents. The Board did not consider the October 2003 memo or the 2000 EIS.
On August 22, 2005, the Board approved the new application with certain conditions (the August 22, 2005 approval). The Board memorialized its approval in a resolution dated September 26, 2005 (the September 26, 2005 resolution), wherein it specifically referenced the testimony from plaintiffs' expert regarding alleged deficiencies in the EIS. The Board found that the application conformed with the Township's ordinance, the Residential Site Improvement Standards, and stormwater management requirements. The Board also imposed certain conditions.
Plaintiffs filed a complaint in lieu of prerogative writs in the Law Division challenging the Board's decision. After a hearing, Judge Accurso determined that Judge Reed's decision was the law of the case. She found, in pertinent part, that:
This [remand before the Board] wasn't to be a second bite. This was to ensure that there had been no taint. And that to me is beyond question. So when it comes back the issue truly is the EIS issue and it appears that ... Judge Reed has already found and I don't disagree at all that the [B]oard ... took this seriously. Wasn't attempting to use it to evade an earlier ruling. And they had four hearings on this application, had a new EIS submitted. Listened to all of the testimony. Imposed new conditions. None that I can find ... are arbitrary or capricious.
. . . .
The [B]oard ... did more than it needed to do on this remand by ordering a new EIS. But clearly, Judge Reed did not determine that this was going to be a second bite at the [apple]. And ... within the scope of the remand the [B]oard ... went above and beyond. [ ] Within the scope of the remand I believe that the [B]oard did everything that it appropriately could within the terms of Judge Reed's order. They ordered a new EIS. They reviewed that EIS thoroughly over the course of several hearings.
Judge Accurso also found that the Board applied additional and enhanced conditions as a result of the new hearings, and it considered Shiffman's and plaintiffs' expert's testimony. Emphasizing that this was a "completely conforming subdivision," the judge concluded that the Board's actions were not arbitrary, capricious or unreasonable. This appeal followed.
Our review of a trial judge's findings is a limited one. Fagliarone v. Twp. of N. Bergen, 78 N.J.Super. 154, 155, 188 A.2d 43 (App.Div.), certif. denied, 40 N.J. 221, 191 A.2d 61 (1963). We will not "`engage in an independent assessment of the evidence as if [we] were the court of first instance,'" N.J. Div. of Youth & Family Servs. v. Z.P.R., 351 N.J.Super. 427, 433, 798 A.2d 673 (App.Div.2002) (quoting State v. Locurto, 157 N.J. 463, 471, 724 A.2d 234 (1999)), and will reverse only if we are convinced the trial judge's factual findings and legal conclusions "are so manifestly unsupported by or inconsistent with the *1235 competent, relevant and reasonably credible evidence as to offend the interests of justice." Fagliarone, supra, 78 N.J.Super. at 155, 188 A.2d 43. However, a "trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995) (citations omitted). Thus, our review of a trial judge's interpretations of law and the applications of law to facts is de novo. Mt. Hill v. Tp. Comm. of Middletown, 403 N.J.Super. 146, 193, 958 A.2d 1 (App.Div.2008). With these standards in mind, we continue our analysis.

I.
Plaintiffs first contend that because of Doyle's conflict of interest, Judge Reed should have vacated the November 2003 approval, required Sherid to file a completely new application, and required the Board to hear the matter anew. We disagree.
The Local Government Ethics Law, N.J.S.A. 40A:9-22.1 to -22.25, establishes a code of ethics which "governs virtually every person who serves in local government, except individuals appointed to purely advisory bodies, and officials, such as school board members and municipal court personnel, who are guided by other equally rigorous requirements." Department of Community Affairs, Local Finance Bd. v. Cook, 282 N.J.Super. 207, 209, 659 A.2d 936 (App.Div.1995). The statute states, in pertinent part, that:
No local government officer or employee shall act in his official capacity in any matter where he, a member of his immediate family, or a business organization in which he has an interest has a direct or indirect financial or personal involvement that might reasonably be expected to impair his objectivity or independence of judgment[.]
[N.J.S.A. 40A:9-22.5d]
"Determination of whether a conflict of interest exists must be done on a case-by-case, fact-sensitive basis. `The question will always be whether the circumstances could reasonably be interpreted to show that they had the likely capacity to tempt the official to depart from his sworn public duty.'" Shapiro v. Mertz, 368 N.J.Super. 46, 53, 845 A.2d 186 (App. Div.2004) (internal citations omitted). Therefore, proof of actual dishonesty is unnecessary. Ibid. (citing Wyzykowski v. Rizas, 132 N.J. 509, 524, 626 A.2d 406 (1993)). When there is a conflict, the court has some flexibility; however, the ultimate goal is to assure the public that the integrity of the proceedings has been maintained. See Wyzykowski, supra, 132 N.J. at 526, 626 A.2d 406 (no conflict when the mayor appeared before the planning board on his own behalf, despite the fact that he appointed some of the members); Szoke v. Zoning Bd. of Adjustment, 260 N.J.Super. 341, 343-45, 616 A.2d 942 (App.Div.1992) (the board's actions were invalid due to the participation by a conflicted board member that exceeded factual or historical testimony); Gunthner v. Planning Bd. of Bay Head, 335 N.J.Super. 452, 461-64, 762 A.2d 710 (Law Div.2000) (a conflict disqualified seven members of the planning board and prevented a quorum; however, the court allowed these members to vote in order to protect the public interest by avoiding statutory automatic approval).
Here, there is no question that Doyle had a conflict of interest. The inquiry concerns the appropriate remedy. Relying on our unpublished opinion in Tuway Service Station, Inc. v. Mahwah Zoning Bd. of Adjustment, No. A-3958-03 (App. Div. July 14, 2005), plaintiffs request a complete "do over." However, we decline *1236 to rely on Tuway, even if that case had precedential value. See R. 1:36-3. Unlike Doyle, the applicant's professional planner in Tuway continued representing the applicant in connection with a matter before the Board after his firm had been appointed Township Planner. Id. (slip op. at 13). Obviously influenced by the planner's dual and extensive involvement in the application, the trial judge rejected the applicant's request to retain a new planner and to excise the previous planner's testimony. The judge required the application "to begin anew." Id. (slip op. at 5). Although we affirmed that disposition, we noted that the trial court retains some flexibility to fashion an appropriate remedy in these situations. Id. (slip op. at 14-15).
Likewise, plaintiffs' reliance on Mt. Hill, supra, is misplaced. In Mt. Hill, a member of the Middletown Township Committee considered and voted on ordinances and a master plan that affected the applicant's property. However, the committeeperson's company had previously performed title work for the applicant and some of its principals. Mt. Hill, supra, 403 N.J.Super. at 203-04, 958 A.2d 1. Although the committeeperson had stopped working for the applicant when she realized her conflict, she did not recuse herself from the proceedings, and continued working for some of the applicant's principles while the proceedings continued. Id. at 204-05, 958 A.2d 1. We invalidated the ordinances and master plan based, in part, on the committeeperson's disqualifying and direct financial conflict of interest. Id. at 206, 958 A.2d 1.
Evidence of the conflicts that were patent in Mt. Hill and Tuway do not exist here. First, we accept Judge Reed's conclusion that the revised application was a new application, and that because the new application complied with all ordinances and required no variance or waiver, the Board was required to approve it. Pizzo Mantin Group v. Twp. of Randolph, 137 N.J. 216, 226, 645 A.2d 89 (1994). Further, Doyle's testimony occurred during the hearings involving the first application. Except for the October 2003 memo, she recused herself from the proceedings, she did not participate in the new application, and she did not continue representing Sherid. On remand, the Board did not consider the October 2003 memo and the 2000 EIS. Rather, it considered new planning reports and the new EIS, and held new hearings, at which both parties presented testimony. We emphasize that an entirely new Board, save one member from the old Board, considered the new application. We are satisfied that the remedy Judge Reed fashioned appropriately removed the taint from Doyle's conflict and maintained the integrity of the proceedings.

II.
Plaintiffs next contend that the new EIS, which it alleges the Board ignored, is so deficient as to make the approval arbitrary, capricious and unreasonable. Plaintiffs argue that the new EIS significantly understates the project's environmental impact and the impact on neighboring properties, and it is inconsistent with the Township's land development ordinances. They conclude that the Board could not rationally have accepted the new EIS's characterization of the project's impacts as "minor to moderate in nature."
Plaintiffs raised these arguments during the remand hearing. The Board considered them and determined they lacked merit. The Board found that the new EIS met, and even in some instances exceeded, the ordinance requirements. At the hearing, even plaintiffs' attorney characterized the EIS as "very credible[.]"
"It is well established that when a reviewing court is considering an appeal *1237 from an action taken by a planning board, the standard employed is whether the grant or denial was arbitrary, capricious or unreasonable." Fallone Properties, L.L.C. v. Bethlehem Twp. Planning Bd., 369 N.J.Super. 552, 560, 849 A.2d 1117 (App. Div.2004). "The factual determinations of the planning board are presumed to be valid and the exercise of its discretionary authority based on such determinations will not be overturned unless arbitrary, capricious or unreasonable." Ibid. (citing Burbridge v. Mine Hill Twp., 117 N.J. 376, 385, 568 A.2d 527 (1990)). "[T]he law presumes that boards of adjustment and municipal governing bodies will act fairly and with proper motives and for valid reasons." Id. at 560-61, 849 A.2d 1117 (quoting Kramer v. Bd. of Adjustment, Sea Girt, 45 N.J. 268, 296, 212 A.2d 153 (1965)) (internal quotations omitted). The arbitrary and capricious standard is analogous to the substantial evidence standard. Cell South v. Zoning Bd. of Adj., 172 N.J. 75, 89, 796 A.2d 247 (2002). The purpose of the reviewing court is to determine if the planning board properly exercised its discretion. The reviewing court should not substitute its judgment for that of the board. Fallone, supra, 369 N.J.Super. at 561, 849 A.2d 1117 (internal citations omitted). However, it is "essential that the board's actions be grounded in evidence in the record." Id. at 562, 849 A.2d 1117. We must use the same standard as the trial court. Ibid.
We emphasize that a planning board is not required to accept the testimony of any expert. El Shaer v. Planning Bd., 249 N.J.Super. 323, 330, 592 A.2d 565 (App.Div.1991), certif. denied, 127 N.J. 546, 606 A.2d 360 (1992). If the testimony of different experts conflicts, it is within the Board's discretion to decide which expert's testimony it will accept. Hughes v. Monmouth University, 394 N.J.Super. 207, 232, 925 A.2d 750 (Law Div.2006), aff'd, 394 N.J.Super. 193, 925 A.2d 741 (App.Div.), certif. denied, 192 N.J. 599, 934 A.2d 640 (2007). Finally, when a subdivision application complies with all the applicable zoning and subdivision ordinances of the municipality, the planning board must approve it. Pizzo Mantin, supra, 137 N.J. at 226, 645 A.2d 89.
Plaintiffs' contention that the Board ignored the new EIS is not supported by the record. Our careful review of the record indicates that plaintiffs' expert raised the very issues plaintiffs raise here, which the Board considered and rejected. It was not arbitrary, capricious or unreasonable to reject plaintiffs' expert's testimony.
As Judge Accurso rightly noted, this application did not require any variances, and was completely in compliance with the subdivision ordinances of Bridgewater. Therefore, in light of Pizzo Mantin, the Board had more than ample grounds to approve the application. The Board had the benefit of hours of expert testimony, both in favor of and opposed to the application, numerous expert reports, as well as advice from its own experts when making this decision. The Board's approval is supported by sufficient, credible evidence in the record, and is not arbitrary, capricious or unreasonable.

III.
Plaintiffs next contend that the record was insufficient for judicial review because there is no transcript of the November 14, 2000 hearing, at which Doyle testified, and because the transcript of the November 23, 2003 hearing is incomplete. Plaintiffs also contend that the August 22, 2005 approval is void due to a lack of a quorum at the November 24, 2003 meeting. Based on our careful review of the record, we conclude that these contentions lack sufficient merit to warrant discussion in a written *1238 opinion. R. 2:11-3(e)(1)(E). We add the following.
The application the Board approved was a new application. The Board did not rely on evidence or testimony submitted at the November 14, 2000 hearing, which concerned the first application. As such, the missing transcript is irrelevant.
The gap in the November 23, 2003 transcript concerned the direct testimony of plaintiffs' expert witnesses. The minutes of that hearing indicate that this testimony simply consisted of a summary of revisions that had been made to the revised plans since the prior hearing. Those plans are part of the record. Also, the substance of the direct testimony is gleaned from the cross-examination. Thus, the gap in the transcript was not of sufficient magnitude to preclude the trial court from engaging in a meaningful review of the record before the Board.
Finally, the Bridgewater Code requires a seven-member Board. Accordingly, N.J.S.A. 40:55D-6 requires a quorum of four Board members, with three members required to vote in favor of an application. Here, five eligible board members voted in favor of the new application, thereby satisfying the statute.
Affirmed.
NOTES
[1] In addition to a different Board, a different Board attorney and Township engineer were involved in the remand hearings.