**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3078-18T1

NEW JERSEY ADVANCE MEDIA,

    Plaintiff-Appellant,

v.

PETER LOMBARDO I/D/B/A
CREATIVE MEDIA & ASSOCIATES,

    Defendant-Respondent.

_____

Argued March 11, 2020 — Decided April 23, 2020

Before Judges Koblitz, Gooden Brown and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-1526-17.

Joseph Elmo Cauda, Jr. argued the cause for appellant (Schumann Hanlon Margulies, LLC, attorneys; Robert E. Margulies, of counsel; Joseph Elmo Cauda, Jr., on the briefs).

Joseph A. Marino argued the cause for respondent (Marino, Mayers & Jarrach, LLC, attorneys; Joseph A. Marino, on the brief).

PER CURIAM

Defendant Peter Lombardo appeals from a March 26, 2019 order entering a directed verdict in favor of plaintiff New Advance Media. We affirm in part, and reverse and remand in part.

In June 2017, plaintiff, an advertising agency, filed a complaint against defendant for unpaid fees, and served interrogatories and requests for admissions. Defendant's answer asserted he was "merely a contact person" in an advertising agreement between DeCozen Chrysler Jeep Dodge (DeCozen) and another entity unrelated to defendant. He asserted an entity named "CMA [Creative Media Associates] agreed to place ads in the NJ Star Ledger on behalf of [DeCozen], through SGW [Integrated Marketing (SGW)]. [Then plaintiff] agreed to display these ads in their publications."

Defendant explained he operated using SGW's credit because CMA had no established credit with any media companies. Beginning in 2005, CMA billed DeCozen for brokering its advertising, DeCozen sent payment to CMA, and CMA forwarded payment to Kris Scelba, a representative of SGW. Scelba was to then subtract his commission and pay plaintiff.

In response to plaintiff's request for admissions, defendant's then-counsel forwarded a May 2018 letter, which stated: "We have not attached the [e]xhibits which will include copies of invoices and e-mails consistent with the [a]nswers.

2

We expect to be in a position to forward those documents within the next day or two and in advance of the return date of the motion relative to the [i]nterrogatories." Defendant claimed he included original invoices from plaintiff to SGW; e-mails among plaintiff's representatives, SGW, and defendant; and the original advertising agreement between plaintiff and SGW as attachments to the interrogatory answers and the pretrial information exchange.

Defendant substituted counsel in June 2018. A two-day bench trial occurred several months later. Plaintiff adduced testimony from defendant and Lynn Finnegan, one of plaintiff's employees. Defendant's testimony established SGW was listed as the billing contact and defendant as the contact person for DeCozen's advertisements with plaintiff. His testimony also established the advertising agreement held the advertiser and its agency "jointly and severally liable for the payment of all bills and charges incurred," and attached interest at a rate no less than 1.5% to any unpaid bills. Defendant's testimony also confirmed he signed an "application for agency recognition" in which he personally guaranteed "payment of all advertising charges and other obligations incurred to NJ Advance Media." Defendant conceded he was not required to execute these documents and could have declined to do so or sought a modification.

Finnegan testified and authenticated plaintiff's billing records. She also testified she knew defendant for twenty years, and he never contacted her to request modification of any of the documents. She could not recall if she ever saw billing information where only SGW, not defendant, was listed.

Following Finnegan's testimony, defendant's counsel recalled him to testify. He described his relationship with plaintiff, reaffirmed invoices were sent to SGW, and claimed the advertising agreement plaintiff relied upon to show defendant was personally responsible for payment "ha[d] been doctored." Defendant attempted to testify regarding the course of conduct relating to the payment for the advertisements on behalf of DeCozen by explaining Scelba's interactions with him. The trial judge barred this testimony on hearsay grounds, but afforded defendant's counsel the opportunity to call Scelba as a witness. Counsel never called Scelba.

Defendant attempted to introduce several documents he claimed were attached to his answers to interrogatories. Also included in the materials were e-mails defendant stated he did not discover until after hearing Finnegan's testimony, including "a colloquy about who is going to pay for the outstanding balance and a statement from one of plaintiff's employees saying, [defendant] talked to . . . [Scelba] of SGW, he will be sending his payment, [and defendant]'s

balance is fairly minor." Plaintiff's counsel objected and noted there was no reference in the interrogatory answers to these documents. The trial judge declined to admit the exhibits.

Plaintiff moved for a directed verdict and attorney's fees. The trial judge granted the motion and made the following findings:

> [I]t is abundantly clear to the [c]ourt that even viewed in the best light, the plaintiff's entitled to the judgment in question. [Defendant] did provide testimony, as did Ms. Finnegan, according to my notes.
>
> If you look back to the . . . underlying pleadings in this case, the plaintiff is . . . suing on a book account, the defense was the money's owed, but I don't owe it because I'm a corporation and someone else owes it. Clearly, I have precluded that infamous set of emails because they were never provided in discovery by prior counsel, notwithstanding a certification to that effect. . . . [I]t's incumbent to provide comprehensive and complete answers and the fact that plaintiff's counsel accommodated the new attorney in the case to allow the case to move forward to arbitration and trial is not a reflection and does not amount to a concession on the part of the plaintiff that they would accept late filings. The discovery order was the discovery order and it was violated when incomplete answers were provided.
>
> Additionally and most significantly, . . . notwithstanding the defendant's [assertion] that he's not personally responsible, the evidence was abundantly clear and uncontroverted that he signed a personal guarantee. The fact that it was after the debt was incurred is of no moment to the [c]ourt because he had

no obligation to sign a personal guarantee and . . . certainly that ultimately was his downfall and, therefore, I'm directing a verdict in favor of the plaintiff in the amount sought, [$]26,000, and the counsel fee of [$7500] is below reasonable. It's very fair, in my estimation. Typically . . . under . . . RPC 1.5, the— counsel would have to itemize his hours of service and . . . I'm just going by eight hours on two separate days and that—without travel time . . . that's—at [$]350 an hour that's . . . [$6000], not to mention trial prep and research and the arbitration and pretrial motions, so certainly the [$7500] is fair and reasonable.

So judgment for plaintiff by directed verdict, [$]26,000 plus counsel fees of [$7500].

## I.

Our review of a trial judge's findings is limited. Fagliarone v. Twp. of N. Bergen, 78 N.J. Super. 154, 155 (App. Div. 1963). Reversal is proper only when "we are convinced the trial judge's factual findings and legal conclusions 'are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Klug v. Bridgewater Twp. Planning Bd., 407 N.J. Super. 1, 9 (App. Div. 2009) (quoting Fagliarone, 78 N.J. Super. at 155). We review a trial judge's interpretations of law de novo. Ibid. (citing Mt. Hill v. Twp. Comm. of Middletown, 403 N.J. Super. 146, 193 (App. Div. 2008)).

## A.

6

Defendant argues the trial judge improperly barred his trial exhibits because they were produced in discovery and served in the pretrial information exchange. Alternatively, citing Plaza 12 Assocs. v. Carteret Borough, 280 N.J. Super. 471, 477 (App. Div. 1995), defendant argues even if the documents were not produced in discovery, the error was inadvertent, and the absence of bad faith, surprise, and prejudice warranted their admission at trial. He argues plaintiff had "the burden to seek a more responsive answer or be barred at trial from objecting to evidence based on the insufficient or unresponsive answer."

Defendant also argues the judge erred by failing to admit the emails defendant discovered during trial between plaintiff's agents and Scelba, which showed plaintiff seeking payment from Scelba on behalf of SGW. Defendant asserts these emails were at "all times equally available to the [p]laintiff as they were to the [d]efendant," and should have been admitted into evidence.

> Evidentiary decisions are reviewed under the abuse of discretion standard because, from its genesis, the decision to admit or exclude evidence is one firmly entrusted to the trial court's discretion. . . . [T]he latitude initially afforded to the trial court in making a decision on the admissibility of evidence . . .requires that appellate review, in equal measures, generously sustain that decision, provided it is supported by credible evidence in the record.
>
> [Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383–84 (2010) (internal citation omitted).]

7

The trial judge did not abuse his discretion by denying admission of defendant's documents because there was insufficient proof the documents were produced during discovery.  Plaza 12 Assocs. is distinguishable because there the party opposing admission was in possession of the same evidence eight months prior to trial which "provided much of the same information" as the documents the party failed to attach to interrogatories.  280 N.J. Super. at 476. Here, defendant sought to admit documents he claimed proved he was not listed as the responsible party in the past, and the documents plaintiff allegedly purposely altered to hold him liable.  However, there was no evidence plaintiff had this information and the judge correctly barred it on the grounds of surprise.

The emails defendant allegedly discovered after plaintiff already prosecuted its claims were even more prejudicial to plaintiff.  Moreover, contrary to defendant's argument, he had the burden to produce discovery.  This burden is memorialized in Rule 4:10-2(a), which posits that a party may not object to producing documents in discovery on grounds "that the examining party has knowledge of the matters as to which discovery is sought."  Therefore, the judge did not err.

Defendant also argues the trial judge's admission of a four-page invoice for $24,557.39, constituted an abuse of direction because it was not a valid

business record made at or near the time the advertisement ran, but created at least seven months later. He argues this contradicted plaintiff's claims and "further elucidate[d] the untrustworthiness of the document." He also asserts plaintiff could not rely upon a 2015 invoice to CMA to prove the sum owed, where plaintiff had no relationship with CMA until defendant signed the credit application on behalf of CMA in 2016.

The admission of a document pursuant to the business records exception under N.J.R.E. 803(c)(6) must meet three requirements: (1) the writing must be made in the regular course of business; (2) it must be prepared within a short time of the act, condition, or event being described; and (3) no credible challenge has been presented to its trustworthiness. See State v. Sweet, 195 N.J. 357, 370-71 (2008) (citing State v. Matulewicz, 101 N.J. 27, 29 (1985)).

Finnegan's testimony satisfied N.J.R.E. 803(c)(6). Regarding the alleged disparity between the advertisement run date and billing period in the invoice, the trial judge stated "that would go to the weight I give that testimony, but [Finnegan] clearly identified it in her direct examination as a statement from [plaintiff] with a balance due[.]" The judge ultimately concluded the invoice correlated with the sums plaintiff argued were due because he accepted Finnegan's unrebutted testimony, which identified the documents' creation and

distribution, her familiarity with defendant's account, and that defendant did not contact her to challenge the invoice, but instead continued to operate as an agent for SGW, apply for credit, and sign as guarantor on the application.

Defendant argues the trial judge erred in barring his testimony on hearsay grounds as to the course of dealings among plaintiff, SGW, and himself to prove plaintiff always intended SGW—not defendant—would be responsible for payment. Defendant's argument lacks merit. Defendant could not testify regarding either plaintiff's, or Scelba's intentions, because it was hearsay. Indeed, the trial judge even advised defendant only Scelba could testify as to whom plaintiff intended to pursue to collect its invoice. Defendant declined to call Scelba to testify. The trial judge did not err.

B.

Defendant challenges the trial judge's finding related to the guaranty. He asserts the 2016 credit application he submitted to plaintiff—under which he allegedly assumed the 2015 debt—was not a part of the original contract between SGW, DeCozen, and plaintiff, and separate consideration was required to enforce the guaranty. He asserts the language only bound him if plaintiff extended credit, which it never did, and therefore "the personal guaranty is merely an unenforceable gratuitous promise." Defendant argues even if the

personal guaranty was not void for lack of consideration, he nonetheless had no obligation to pay prior debts because the credit application on its face did not specify defendant guaranteed the third party's prior-incurred debts.

The guaranty language stated: "In consideration of the extension of credit by NJ Advance Media to (_____) with respect to the placement of advertisements in NJ Advance Media, the undersigned does hereby personally and unconditionally guarantee payment of all advertising charges and other obligations incurred to NJ Advance Media." This language clearly stated defendant personally guaranteed all advertising charges incurred to plaintiff from DeCozen's advertising. Moreover, the personal guaranty was attendant to and part of an application for agency recognition and credit.

> A mere promise to pay antecedent debt of another is not generally regarded as consideration for a guaranty. . . . [E]ither [a] slight benefit to the promisor or a trifling inconvenience to the promisee suffices [as consideration]. Most importantly, it is unnecessary that any consideration pass directly from [a] guarantee . . . to the guarantor . . . and any consideration moving from the original obligors . . . to the guarantor . . . is sufficient to support the guaranty contract.
>
> [Great Falls Bank v. Pardo, 263 N.J. Super. 388, 401 (Ch. Div. 1993) (internal citations omitted).]

11

There was ample evidence of valid consideration for the guaranty. Defendant's role as guarantor facilitated the ability to place advertisements with DeCozen. The trial judge did not commit reversible error.

C.

Defendant argues it was error to grant plaintiff a directed verdict before defendant's testimony was complete and before the judge heard from one of plaintiff's former employees who was present to testify. We disagree.

> Under Rule 4:40-1, a party may make a motion for a directed verdict "either at the close of all the evidence or at the close of the evidence offered by an opponent." A motion for directed verdict must be denied if, "accepting as true all the evidence which supports the position of the party defending against the motion and according him the benefit of all inferences which can reasonably and legitimately be deduced therefrom reasonable minds could differ." "[W]e apply the same standard that governs the trial courts."
>
> [Vitale v. Schering-Plough Corp., 447 N.J. Super. 98, 119–20 (App. Div. 2016) (alteration in original) (internal citations omitted).]

Here, a directed verdict was entered after the judge barred the documents defendant claimed he produced in discovery. Defendant acknowledged he had no witness who could offer testimony that did not involve the excluded documents. Moreover, defendant did not challenge the amount plaintiff claimed was owed. The trial judge found it "was abundantly clear and uncontroverted

12

that [defendant] signed a personal guarantee," and "[t]he fact it was after the debt was incurred is of no moment to the [c]ourt because he had no obligation to sign a personal guarantee[.]" Therefore, liability and plaintiff's damages were clearly established, and a directed verdict in plaintiff's favor was appropriate.

D.

Defendant argues the trial judge awarded $7500 in counsel fees without an RPC 1.5 affidavit of services. He asserts the judge erred by accepting plaintiff's counsel's representation of his hourly billable rate and multiplying it by an estimate of the time spent, without any evidence to support his findings.

Counsel "fee determinations by trial courts will be disturbed only on the rarest of occasions, and then only because of a clear abuse of discretion. That deferential standard of review guides our analysis." Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001) (internal citation and quotation omitted).

"The starting point in awarding attorneys' fees is the determination of the 'lodestar,' which equals the 'number of hours reasonably expended multiplied by a reasonable hourly rate.'" Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 21 (2004) (quoting Rendine v. Pantzer, 141 N.J. 292, 335 (1995)). Rule 4:42–9(b) requires that this determination be supported by an affidavit addressing the eight factors

enumerated in RPC 1.5(a) and detailing the amount of fees and disbursements sought. Furst, 182 N.J. at 21 (citing R. 4:42– 9(b)).

The parties' contract stated: "If it becomes necessary to place with an attorney for collection any claim for funds due under the terms of this [a]greement, then [a]dvertiser and [a]gency agree to pay to [p]ublisher the reasonable attorney's fees arising from such collection." The trial judge himself acknowledged during Finnegan's testimony that "[i]f there's an award of counsel fees . . . when the case is over, I will require an RPC 1.5 certification before I make that determination." However, plaintiff did not provide the affidavit.

Even though defendant failed to object to the award, the trial transcripts demonstrate it was because there was no opportunity to do so as the judge summarily calculated the award and concluded the proceedings. Notwithstanding, the time stamps on the trial transcripts do not support the trial judge's finding that eight hours were spent in trial each day. The transcripts show trial lasted approximately three hours and fifty-two minutes, which would total approximately $1400 in fees at plaintiff's counsel's hourly rate. The judge's decision lacked findings for the remaining $6100 (nearly seventeen and one-half hours of time) awarded because there was no itemization of the time plaintiff's counsel spent on the other categories of "trial prep and research and the

arbitration and pretrial motions" the judge identified. For these reasons, we reverse and remand the counsel fee determination for reconsideration pursuant to the RPC 1.5 factors.

Affirmed in part, and reversed and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15                                                                    A-3078-18T1