**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2288-19

RALPH LAKS,

     Plaintiff-Appellant,

v.

MICHAEL HERZOG,
PEARL HERZOG, DAVID
HERZOG, SAMUEL
PRESCHEL, and
LAKEWOOD TOWNSHIP
PLANNING BOARD,

     Defendants-Respondents.

_____

     Argued November 17, 2021 – Decided February 25, 2022

     Before Judges Gilson and Gooden Brown.

     On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-0255-19.

     Ralph Laks, appellant pro se.[1]

---

[1] Appellant waived oral argument.

Allen Weiss argued the cause for respondents Michael Herzog, Pearl Herzog, David Herzog, and Samuel Preschel.

Jilian McLeer argued the cause for respondent Lakewood Township Planning Board (King, Kitrick, Jackson, McWeeney & Wells, LLC, attorneys; John Jackson III, of counsel; Jilian McLeer, on the brief).

PER CURIAM

In this prerogative writs action, self-represented plaintiff Ralph Laks appeals from the November 18, 2019 Law Division order affirming the resolution of defendant Lakewood Township Planning Board (Board) and dismissing his complaint with prejudice, and the January 17, 2020 order denying reconsideration. The Board's resolution granted defendants David Herzog, Michael Herzog, Pearl Herzog, and Samuel Preschel (the Herzog defendants) preliminary and final subdivision approval without variances to subdivide a parcel of land into seven residential lots to construct new single-family detached dwellings on each lot. Having considered the parties' arguments in light of the record and applicable legal principles, we affirm.

The parcel at issue is owned by the Herzog defendants, designated as Block 25, Lot 62 on the official tax map, and located at 1052 West County Line Road in Lakewood Township. The more than three-acre property fronts West County Line Road and contains an existing vacant single-family residence. The

property is situated in the R-12 Single Family Residential Zoning District (R-12 zone) and is surrounded by residential development. The Herzog defendants sought to subdivide the property to construct new single-family detached dwellings on each lot, conforming to the use requirements of the R-12 zone. Plaintiff is an adjacent property owner who primarily objects to the portion of the plan erecting a six-foot fence along his backyard.

In November 2017, the Herzog defendants initially applied to the Board for preliminary and final subdivision approval to subdivide the property into eight residential lots. That proposal sought design waivers and bulk variances for lot widths of eighty-six feet for each of the proposed lots where ninety feet was required by the Lakewood Township Unified Development Ordinance (UDO). Twp. of Lakewood, N.J., Mun. Code § 18-902(E)(4)(b). The Herzog defendants complied with the notice provisions of the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-11 to -12, by publishing the requisite notice of the application on March 5, 2018.

The Board held public hearings on the application on March 20, June 5, July 10, September 4, and November 27, 2018. As a result of objections raised by plaintiff and others as the hearings progressed, the Herzog defendants revised the application to subdivide the property into seven instead of eight residential

3

lots. The revised plans did not require any variances and were consistent with the R-12 zoning requirements. As such, the revised plans were considered under N.J.S.A. 40:55D-50(a), requiring the planning board to "grant final approval if the detailed drawings, specifications and estimates of the application for final approval conform to the standards established by ordinance for final approval." The revised application was then "re-noticed, and re-published" on November 10 and 13, 2018, "identify[ing] . . . the application . . . [as] a seven[-]lot subdivision for single family detached residences without the need for variances."

The Board Engineer, Terence Vogt, Regional Manager at Remington and Vernick Engineers, reviewed the revised plans and issued a detailed report dated November 19, 2018 (Vogt Report). The Vogt Report evaluated the proposal and made recommendations, all of which were agreed to by the Herzog defendants. The Vogt Report described the revised plans as a proposal "to create seven . . . new single-family lots . . . [lots 62.01 through 62.07] . . . and . . . a cul-de-sac road." The creation of the cul-de-sac road was necessary "to access the new lots," and "[a]ll of the proposed lots would front on the new cul-de-sac." "Proposed [l]ot 62.07 . . . contain[ed] a five[-]foot [wide] . . . strip of land between the western side of the cul-de-sac and the property line boundary of the

site," extending from "the tangent of the cul-de-sac bulb [to West County Line Road]."[2] The strip, containing a sidewalk, would "be maintained by a private [h]omeowner's [a]ssociation" comprised of the owners of the seven lots. A "six-foot . . . high solid fence" would be built on the strip, essentially creating a barrier between the rear yards abutting the cul-de-sac and the cul-de-sac itself, thereby solving the potential issue of the preexisting lots' front and back yards both bordering a street.

As the hearings continued, the Board considered the revised plans. Brian Flannery, a licensed professional engineer and professional planner, testified as an expert for the Herzog defendants. Flannery testified that instead of the original proposed eight lots, which required variances, the revised plans "reduced [the number of lots] . . . to seven . . . completely conforming [lots with] . . . no variance relief requested." He also verified that the proposed residential subdivision was a permissible use in the R-12 zone. Further, Flannery confirmed that the strip or buffer along the property line would be "maintained by [a] homeowner's association," and specified that the "fence . . . [would extend] from the front of the last house on the cul-de-sac all the way

---

[2] A "[s]ight [t]riangle [e]asement dedicated to Ocean County at the intersection of West County Line Road and the new cul-de-sac" was proposed.

along the property line [to West County Line Road]." He clarified that the Herzog defendants were proposing a six-foot fence "all the way to the sight triangle,"[3] but "would . . . either [erect] a four[-]foot [fence] or . . . [a] six[-]foot [fence]" within thirty feet of County Line Road, depending on what "the Board [deemed] appropriate." According to Flannery, landscaping would also be provided within the five-foot strip.

Scott Kennel, a traffic consultation expert, had testified for the Herzog defendants at an earlier hearing in support of the initial plans. Kennel prepared a traffic study that was submitted to the Board, detailing that the initial sub-division proposal "with eight homes" would generate approximately "[twelve trips per hour] in the morning [and sixteen trips per hour] in the afternoon," "all within acceptable [traffic] ranges . . . [for] the County." Kennel had also testified that the fence should end "prior to the property corner," to "be compliant with the sight triangle easement" and avoid a sight-blocking issue for vehicles turning in or out of the subdivision.

---

[3] Flannery explained that a sight triangle formed by the intersection of the two streets required "adequate site distance" so that a car pulling up to the intersection would have available visibility for "a [far] enough distance" without having to pull into the intersection.

A-2288-19

In opposition to the application, plaintiff and other residents raised concerns related to "adding th[e] extra road," citing traffic issues, "privacy," "lights shining into [their] homes," and "public safety." At an earlier hearing, plaintiff had presented several experts who had criticized the initial application and condemned the granting of a variance, including John Kornick, a licensed civil engineer, Andrew Feranda, a professional traffic operations engineer, and Thomas Scangarello, a licensed planner. In particular, Feranda had chided Kennel's traffic study for not considering crash data and had recommended a "right turn in/right turn out" of the cul-de-sac because of the volume of cars and the speed on County Line Road. However, Feranda had acknowledged that issues involving County Line Road were under the exclusive jurisdiction of the County, not the Board.

On November 27, 2018, the Board voted to approve the subdivision application. In its December 19, 2018 memorializing resolution, the Board found the application "met the requirements of N.J.S.A. 40:55D-50." The Board determined "[b]y granting the application, there w[ould] be no detriment to neighboring properties; . . . no impairment of light, air and open space to and from adjacent properties; . . . [and] no detriment to the public good." Further, the proposed development "w[ould] not substantially impair the intent and

7

purpose of the municipal zoning ordinance and master plan." The resolution also confirmed that "[e]xcept for the submission waivers" which were granted at the March 20, 2018 public hearing, "the applicant complied in all respects with the [UDO], and no longer request[ed] any variances therefrom."

Critically, the Board granted approval subject to numerous conditions delineated in the resolution. Pertinent to this appeal, as a condition of approval, the Herzog defendants were required to obtain all necessary approvals from "any Federal, State, County or Municipal agency having regulatory jurisdiction of th[e] development." Additionally, the Board required the Herzog defendants to "comply with all the provisions" of the Vogt Report. Among other things, the Vogt Report clarified the fence requirements, specifying that the "propose[d] . . . six[-]foot . . . high solid fence along the westerly side of the project" "must end at least thirty feet . . . from the West County Line Road right-of-way, unless a design waiver [was] granted."

In response, on January 29, 2019, plaintiff filed a one-count complaint in lieu of prerogative writs challenging the Board's decision. In the complaint, plaintiff alleged that "on or about November 1, 2017, [the Herzog defendants] applied . . . for an eight . . . lot subdivision with variances and numerous waivers," which was "approved" "[b]y [r]esolution adopted by the . . .

8

Board . . . on or about December 19, 2018." The complaint described the Board's action in approving the application as "arbitrary, capricious, unreasonable, oppressive, unlawful and against the great weight of the evidence."

At the November 18, 2019 trial on the record of the proceedings before the Board, plaintiff, who was then represented by counsel, asserted the UDO required a variance for fences over four feet high in front yards. See Twp. of Lakewood, N.J., Mun. Code § 18-803(F)(3)(5) (stating "[a] fence within the front yard setback area of any lot, except a corner lot, shall not exceed four feet in height" and "[i]n the case of a corner lot, the fence in the front yard setback area designated by the property owner as a 'side yard' may not exceed six feet in height."). According to plaintiff, because the fence "along . . . the . . . lot line running out to County Line Road" was six feet in height when the UDO permitted only four feet, a variance was required. In addition, plaintiff argued the proposed plans included "a number of design waivers" that were never "mentioned in the [r]esolution." Plaintiff asserted since the plans required a variance for both the fence and the design waivers, the resolution was "willfully inadequate" because the Board "simply approved the plans" without indicating "whether or not a variance was granted."

The Board countered "that the [r]esolution was adequate for purposes of th[e] approval." The Board acknowledged "there might have been some design waivers granted" but a design waiver was "not a variance." The Board asserted "under N.J.S.A. 40:55D-50 and 40:55D-46(b)," it did not have the right to deny an application to subdivide "unless [the application] fail[ed] to comply with a portion of the [UDO] requirements," which "was [not] the case here." Instead, the proposal "was fully conforming with the various provisions of the . . . [UDO]," and the Board "acted accordingly in approving the application." The Board also noted that the application was scrutinized in "multiple public hearings," during which the Herzog defendants averred through their testifying experts that "no variances were required and none [were] sought." Further, the Board confirmed through its own professionals that "no variances [were] need[ed]." According to the Board, after considering "all of the evidence," including "the evidence presented by the objectors[,] which the Board ha[d] the right to either accept or reject," the Board "made a decision to approve the application." See Bd. of Educ. of Clifton v. Zoning Bd. of Adjustment of Clifton, 409 N.J. Super. 389, 434 (App. Div. 2009) ("Zoning boards may choose which witnesses, including expert witnesses, to believe.").

The Herzog defendants argued that while the initial plans required variances, the revised application did not. Additionally, given the concerns raised by neighbors about "the proposed cul-de-sac road" abutting "their rear yards," resulting in them "having a two front yard problem," defendants "create[ed] a five-foot [wide] strip," extending from the end of the cul-de-sac to West County Line Road as part of Lot 62.07. According to the Herzog defendants, by erecting a six-foot high fence to create a buffer between the cul-de-sac and the existing lots' rear yards, a variance was not needed because the fence was in Lot 62.07's "side yard" rather than its "front yard," and a six-foot high fence is permitted "in a side yard." Regarding the design waivers, the Herzog defendants maintained that waivers were "really a completeness issue and not a variance issue."

In a November 18, 2019 order, the trial judge upheld the Board's decision and dismissed plaintiff's complaint with prejudice. In an oral decision explaining the ruling, the judge found the "seven-lot subdivision" conformed with "the bulk requirements of the [UDO] and [wa]s consistent with the residential use authorized" in the R-12 zone. Further, because no variance was sought or granted and the application was fully conforming, the judge found no basis to reverse the Board's decision. The judge explained it "[wa]s common

11

and usual that the Board would give [design] waiver[s]" and any design waivers granted by the Board did not implicate zoning issues. See N.J.S.A. 40:55D-51(a) (empowering Planning Boards "to grant . . . exceptions" when providing preliminary subdivision approval); Wawa Food Mkt. v. Planning Bd. of Ship Bottom, 227 N.J. Super. 29, 34 (App. Div. 1988) (explaining that Planning Boards have the power to waive requirements of subdivision regulations but not zoning ordinance requirements). The judge also determined because "the six-foot fence . . . conformed with the requirements for a side yard fence," a variance was not required. Thus, the judge concluded the Board's approval of the Herzog defendants' application was not "arbitrary, capricious, [or] unreasonable."

On December 10, 2019, representing himself, plaintiff moved for reconsideration, reiterating the arguments previously rejected by the judge.[4] In addition, during oral argument, plaintiff asserted that neither the Board nor the Herzog defendants established on the record whether the five-foot strip of land was "a front yard or a side yard." By order dated January 17, 2020, the judge denied the motion. In a supporting oral opinion, the judge dismissed plaintiff's

_____

[4] On December 24, 2019, plaintiff's counsel filed an appeal from the November 18 order, which was withdrawn pending disposition of the motion for reconsideration.

arguments, finding that "the six-foot fence was . . . not requested by the applicant but required by the Board as a . . . condition" for approving the revised plans and that requirement was "within [the Board's] discretion."

The judge explained that because the new cul-de-sac road would result in the rear yards of the preexisting lots, including plaintiff's, "being on a public right-of-way," the Board required that the five-foot-strip of property be maintained as "a buffer" with "landscaping within that five-foot buffer area." This strip would "shield . . . the view from the backyard of the existing homes including [plaintiff's] home from . . . the traffic and the movement of people on that street." According to the judge, the Board required the erection of the "six-foot-fence" for two reasons: (1) "to eliminate the concern that lots that would be on the new street would effectively have two front [yards]"; and (2) "to provide protection." The judge determined the Board's actions were not arbitrary or capricious and plaintiff failed to establish any "basis for reconsideration." This appeal followed.

On appeal, plaintiff reiterates that the five-foot wide strip extending from the end of the sight triangle easement at County Line Road to lot 62.07 at the bulb of the cul-de-sac is a front yard, not a side yard. Thus, plaintiff renews his contention that without a variance, the fence height is constricted to four feet

13

under "Section 18-803(F) of the Lakewood [UDO]."  Plaintiff argues that in approving the application, the Board implicitly granted a variance for the six-foot fence, which the Board "had no jurisdiction" to do.  According to plaintiff, because only the zoning board of adjustment is authorized to approve a fence height variance, the resolution is "null and void" and should be "set aside."[5]

"When reviewing a trial court's decision regarding the validity of a local board's determination, 'we are bound by the same standards as was the trial court.'"  Jacoby v. Zoning Bd. of Adjustment of Englewood Cliffs, 442 N.J. Super. 450, 462 (App. Div. 2015) (quoting Fallone Props., LLC v. Bethlehem Twp. Planning Bd., 369 N.J. Super. 552, 562 (App. Div. 2004)).  And, "[l]ike the trial court, our review of a planning board's decision is limited."  Bd. of Educ. of Clifton, 409 N.J. Super. at 434.

---

[5] In his reply brief, plaintiff raises issues related to the proposed homeowner's association, the ownership of lot 62.07, and the extent of the waivers granted. However, it is improper for a party to use a reply brief to raise an issue for the first time or enlarge an argument asserted in the merits brief.  See State v. Smith, 55 N.J. 476, 488 (1970) (noting the impropriety of a party "enlarg[ing] on [the] main argument" or raising an "additional" issue in a reply brief); L.J. Zucca, Inc. v. Allen Bros. Wholesale Distribs. Inc., 434 N.J. Super. 60, 87 (App. Div. 2014) (determining that an argument raised for the first time in a reply brief is "deem[ed] . . . to have been waived"); Borough of Berlin v. Remington & Vernick Eng'rs, 337 N.J. Super. 590, 596 (App. Div. 2001) ("Raising an issue for the first time in a reply brief is improper.").  Thus, we decline to consider those issues.

Under our standard of review, "[a] board's decision 'is presumptively valid, and is reversible only if arbitrary, capricious, and unreasonable.'" Smart SMR of N.Y., Inc. v. Borough of Fair Lawn Bd. of Adjustment, 152 N.J. 309, 327 (1998) (quoting Sica v. Bd. of Adjustment of Wall, 127 N.J. 152, 166-67 (1992)). Thus, we will defer to the Board's decision "if it is supported by the record and is not so arbitrary, capricious, or unreasonable as to amount to an abuse of discretion." Ibid.

"Because a board['s] . . . actions are presumed valid, the party 'attacking such action [has] the burden of proving otherwise.'" Cell S. of N.J., Inc. v. Zoning Bd. of Adjustment of W. Windsor Twp., 172 N.J. 75, 81 (2002) (third alteration in original) (quoting New York SMSA Ltd. P'ship v. Bd. of Adjustment of Bernards, 324 N.J. Super 149, 163 (App. Div. 1999)). Further, "because of their peculiar knowledge of local conditions," planning boards "must be allowed wide latitude in the exercise of delegated discretion," and "[c]ourts cannot substitute an independent judgment for that of the boards in areas of factual disputes; neither will they exercise anew the original jurisdiction of such boards or trespass on their administrative work." Kramer v. Bd. of Adjustment, 45 N.J. 268, 296 (1965); see also Jock v. Zoning Bd. of Adjustment of Wall, 184 N.J. 562, 597 (2005) ("[P]ublic bodies, because of their peculiar

knowledge of local conditions, must be allowed wide latitude in their delegated discretion.").

Therefore, "courts ordinarily should not disturb the discretionary decisions of local boards that are supported by substantial evidence in the record and reflect a correct application of the relevant principles of land use law." Lang v. Zoning Bd. of Adjustment of N. Caldwell, 160 N.J. 41, 58-59 (1999). "Even when doubt is entertained as to the wisdom of the action, or as to some part of it, there can be no judicial declaration of invalidity in the absence of clear abuse of discretion by the public agencies involved." Kramer, 45 N.J. at 296-97; see also Jock, 184 N.J. at 597 ("The proper scope of judicial review is not to suggest a decision that may be better than the one made by the board, but to determine whether the board could reasonably have reached its decision on the record.").

"The MLUL evinces a legislative design to require consistency, uniformity, and predictability in the subdivision-approval process." Pizzo Mantin Grp. v. Twp. of Randolph, 137 N.J. 216, 229 (1994). "The legislative scheme contemplates that a planning board's review of a subdivision proposal, including the layout of the entire design, must be made within the framework of the standards prescribed by the subdivision and, if pertinent, the zoning ordinances." Ibid. "To accomplish this legislative intent, N.J.S.A. 40:55D-46b

16

specifically provides that '[t]he planning board shall, if the proposed development complies with the [municipal site plan] ordinance and this act, grant preliminary site plan approval.'" W.L. Goodfellows & Co. of Turnersville, Inc. v. Wash. Twp. Planning Bd., 345 N.J. Super. 109, 115 (App. Div. 2001) (alterations in original). Similarly, N.J.S.A. 40:55D-50(a) requires that a planning board grant final approval for fully conforming subdivisions applications.

Thus, under the MLUL, if no variance is required, the Board must grant subdivision approval to a development application that complies with the design standards and other requirements of a municipality's subdivision ordinance and the MLUL. Pizzo Mantin, 137 N.J. at 228-29; see also Klug v. Bridgewater Twp. Planning Bd., 407 N.J. Super. 1, 11 (App. Div. 2009) ("[B]ecause the new application complied with all ordinances and required no variance or waiver, the Board was required to approve it."). "[T]he general purposes of the land-use laws may be fully effectuated by municipalities through their incorporation in subdivision ordinances that provide clear standards to guide both property owners and planning boards." Pizzo Mantin, 137 N.J. at 230.

Applying these principles, we discern no basis for disturbing the Board's reasoned decision to approve the Herzog defendants' application for the seven-

lot subdivision of their property without a variance. The Board conducted extensive hearings over several days. It heard testimony from proponents, objectors, experts, and residents. The revised proposed development was a permitted use in the R-12 zone and no variances were required or sought. In granting the fully conforming application, the Board acted in conformity with the MLUL and the municipal ordinance. Thus, the Board's action was not arbitrary, capricious, or unreasonable and its decision is supported by sufficient credible evidence in the record. Plaintiff's arguments to the contrary, while earnestly asserted, are without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E). We affirm substantially for the reasons set forth in the Board's comprehensive resolution and the trial judge's cogent oral decision upholding it.

Although the notice of appeal identified the reconsideration order, nowhere in plaintiff's brief does he present any legal argument why the judge mistakenly exercised her discretion in denying reconsideration. Consequently, plaintiff has effectively waived this argument on appeal. See N.J. Dep't of Env't Prot. v. Alloway Twp., 438 N.J. Super. 501, 505-06 n. 2 (App. Div. 2015); El-Sioufi v. St. Peter's Univ. Hosp., 382 N.J. Super. 145, 155 n.2 (App. Div. 2005)

18

(citing In re Certification of Need of Bloomingdale Convalescent Ctr., 233 N.J.

Super. 46, 48 n.1 (App. Div. 1989)).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2288-19